```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
   SONYA IVANOVS and KATIE           1:17-cv-01742-NLH-AMD
   HOFFMAN, ON BEHALF OF
   THEMSELVES AND ALL OTHER          OPINION
   SIMILARLY SITUATED EMPLOYEES,

               Plaintiffs,

        v.

   BAYADA HOME HEALTH CARE,
   INC.,

               Defendant.
```

**APPEARANCES**

MICHAEL JOHN PALITZ
SHAVITZ LAW GROUP, P.A.
830 3rd Avenue, 5th Floor
New York, NY 10022

GREGG I. SHAVITZ (ADMITTED PRO HAC VICE)
ALAN L. QUILES (ADMITTED PRO HAC VICE)
SHAVITZ LAW GROUP, P.A
1515 SOUTH FEDERAL HIGHWAY, SUITE 404
BOCA RATON, FL 33432
     On behalf of Plaintiffs

MICHAEL D. HOMANS
HOMANS PECK LLC
1835 MARKET ST
SUITE 1050
PHILADELPHIA, PA 19103
     On behalf of Defendant

**HILLMAN**, District Judge

Presently before the Court is the motion of Plaintiffs to conditionally certify their collective action claims for Defendant's alleged violations of the federal Fair Labor

Standards Act. For the reasons expressed below, Plaintiffs' motion will be granted.

**BACKGROUND**

Plaintiffs Sonya Ivanovs and Katie Hoffman, on behalf of themselves and all those similarly situated, allege that Defendant, BAYADA Home Health Care, Inc., unlawfully classifies all of its Client Service Managers ("CSMs") nationwide as exempt from the minimum wage and overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

According to Plaintiff, BAYADA is a home healthcare provider with more than 330 office locations in 21 States, and its operations are generally divided into two primary business lines: Home Health and Home Care. The Home Health business line offices provide home visit services (typically one hour or less) by various medical professionals and paraprofessionals providing nursing, therapeutic, and rehabilitative care primarily on a short-term basis. The Home Care business line offices provide nursing and personal care to people with chronic illness, injury, or disability, primarily on an ongoing shift (two hours or more) basis.

Each office location typically employs one or more CSM. Plaintiff relates that Home Heath CSMs and Home Care CSMs perform the same primary duty – filling shifts for nursing and medical paraprofessional care in clients' homes – but the method

2

by which that duty is carried out differs slightly between Home Health CSMs and Home Care CSMs, as do their secondary duties. Ivanovs was a Home Health CSM and Hoffman was a Home Care CSM.

Plaintiffs claim that BAYADA classifies CSMs as exempt despite the fact that it requires CSMs to perform non-exempt duties as their primary duties, including but not limited to: scheduling health care professionals for patients, calling health care professionals for assignments, performing patient intake calls, contacting patient referrals, and verifying insurance coverage for patients. Plaintiffs claim that based upon this unlawful exempt classification, BAYADA has willfully refused to pay the CSMs the required overtime compensation for overtime hours worked.

Plaintiffs have moved for conditional certification of their FSLA collective action, and have proposed two nationwide sub-classes. Plaintiffs propose as sub-class 1 BAYADA Home Health CSMs who worked for BAYADA at any location nationwide during the three years prior to the Court's order allowing notice. Plaintiffs propose as sub-class 2 the BAYADA Home Care CSMs who worked for BAYADA at any location nationwide during the three years prior to the Court's order allowing notice. Plaintiffs have also provided forms of notices to be sent out to all potential opt-in plaintiffs, as well as proposed the modes of dissemination of those notices.

Defendant has objected to Plaintiffs' motion, arguing that because the duties of CSMs differ significantly across its 330 offices, and the determination of whether an employee should be classified as exempt or non-exempt requires a very fact-specific analysis, Plaintiffs' FLSA claims cannot be pursued as a nationwide collective action. Defendant also opposes Plaintiffs' forms of notice and methods of dissemination.

## DISCUSSION

### A. Jurisdiction

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### B. Analysis

Plaintiffs are seeking to conditionally certify this matter as a collective action under the FLSA, and to authorize Court-supervised notice to similarly situated employees. The court in <u>Pearsall-Dineen v. Freedom Mortgage Corp.</u>, 27 F. Supp. 3d 567, 569-71 (D.N.J. 2014) (quoting 29 U.S.C. § 216(b) and following <u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>, 729 F.3d 239, 242–43 (3d Cir. 2013)), articulated the two-step process by which the FLSA permits an employee who believes his or her right to overtime compensation has been violated to proceed in a

collective action, "for and on behalf of himself or themselves and other employees similarly situated":

> The first step analysis begins when a plaintiff moves for conditional certification of a collective action. This step generally "occurs early in the litigation when the court has minimal evidence." The conditional certification process, despite sometimes borrowing the language of class action certification from Federal Rule of Civil Procedure 23, is not really a certification but instead is a "district court's exercise of [its] discretionary power ... to facilitate the sending of notice to potential class members." Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 194 (3d Cir. 2011) (citation omitted), rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013).
>
> When considering the first step of conditional certification, courts apply a "fairly lenient standard" to determine whether the plaintiff has met the "modest factual showing" necessary for certification. Zavala, 691 F.3d at 536 n.4. Under this standard, a plaintiff "must produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. (internal quotation marks omitted) (quoting Symczyk, 656 F.3d at 193). This generally requires review of both the pleadings and affidavits in support of or in opposition to the proposed collective action. A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification.
>
> Following conditional certification, a FLSA collective action proceeds to discovery. At or near the conclusion of discovery, a court (upon motion by either the plaintiff for final certification or by the defendant for decertification) proceeds to the final step for certification. Symczyk, 656 F.3d at 193. "It is possible for a class to be certified at stage one but fail certification at stage two." The final certification step requires a plaintiff to establish, by a preponderance of the evidence, that the plaintiff and opt-in plaintiffs are "similarly situated." Zavala, 691 F.3d at 536. Courts make this evaluation on a case-by-case basis . . . .

Pearsall-Dineen, 27 F. Supp. 3d at 569-71 (some citations and quotations omitted).

In this case, to support the factual nexus between the manner in which Defendant's alleged policy affected Plaintiffs and the manner in which it affected other employees, Plaintiffs have presented evidence that:

1. BAYADA uses a single, uniform job description for all Home Health CSMs across the country, and another single, uniform job description for all Home Care CSMs across the country. Plaintiffs and eleven Opt-In Plaintiffs who joined this case worked at more than fifteen BAYADA locations in eleven states. Six of the Plaintiffs and Opt-Ins worked in Home Health Offices, five worked in Home Care offices, and two worked in an office providing Home Health and Home Care services. Their job duties included:

   - Coordinating visits from caregivers;

   - Answering client questions;

   - Engaging in customer service;

   - Relaying messages from clients to caregivers and among caregivers;

   - Speaking with referral sources to obtain client information;

   - Verifying insurance coverage; and

   - Submitting routine paperwork.

   Plaintiffs state that they performed these non-managerial tasks while working in excess of forty hours per week, and that between 70% and 95% of their time was dedicated to non-exempt duties.

2. BAYADA standardizes its practices and processes at all offices. It does this through hundreds of policies promulgated by the corporate office, and through its New Jersey headquarters and Central Support Services offices.

BAYADA has established Home Health and Home Care "Playbooks" that cover every aspect of the company's office operations. Particularly with CSMs, BAYADA trains CSMs through uniform training materials generally applicable to Home Health and Home Care CSMs across the company, including the fact that when a CSM transfers from one office to another, the CSM does not require any additional training to perform his or her duties.

3. The compensation method is the same for CSMs, and all CSMs nationwide are paid on a salaried basis and are not paid overtime.

Defendant argues that Plaintiffs' purported evidence to show the commonality between all CSMs across the country is simply general corporate policy and not specific to each CSM in each of its 330 offices. Defendant also points to the differences between the two Plaintiffs' testimony about each of their jobs to show that if the two named Plaintiffs are not similar, then Plaintiffs cannot show that all the other CSMs are similar.[1]

---

[1] Defendant also argues that Plaintiff Ivanovs is not a proper plaintiff because when she was terminated from employment with Defendant she signed a release and separation agreement, which released all past and future claims against Defendant, and required her to certify she had informed Defendant of any complaints or concerns she had about her employment at the time she signed the release. Plaintiff counters that that the agreement did not specifically release any FLSA claims, and that FLSA claims can only be released upon a court's or the Department of Labor's approval. Because Defendant has not moved to dismiss Plaintiff Ivanovs' claims against it, the issue is not before the Court to decide. The Court notes, however, claims brought under the FLSA may only be settled or compromised by either: (1) the Secretary of the Department of Labor supervising payments to employees under § 216(c); or (2) a district court approves the settlement pursuant to 29 U.S.C §

Plaintiffs counter that Defendant's argument fails to recognize that Plaintiffs have proposed two sub-classes to address the differences between Home Care CSMs and Home Health CSMs, even though many of their duties overlap. Plaintiffs also reiterate that their burden at this stage is not to establish that their claims should be certified as a collective action, but rather to only provide a "modest" showing that their claims are common to other employees of Defendant in the same positions so that those employees may be identified to determine whether a collective action may stand.

The Court recognizes that the question of whether an employer has properly classified a position as exempt from the FLSA overtime pay requirements compels a court to perform "an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria" to determine whether all employees in that position uniformly carried out similar duties and responsibilities. Aquilino v. Home Depot, U.S.A., Inc., 2011 WL 564039, at *7 (D.N.J. 2011) (citing Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 495 (D.N.J. 2000)) (other citations omitted). That analysis is performed, however, at the "decertification" stage, and not at the initial "conditional certification" stage.

---

216(b). Singleton v. First Student Management LLC, 2014 WL 3865853, at *7 (D.N.J. 2014) (citations omitted).

Id.

"The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Genesis Healthcare, 133 S. Ct. at 1530. Once conditional certification is granted and notice has been sent to the potential members of the collective action, the Court then performs the second inquiry – commonly known as the "decertification stage" – into whether the plaintiffs are similarly situated to the remainder of the members of the collective action. Aquilino, 2011 WL 564039 at *7 (D.N.J. 2011) (citing Morisky, 111 F. Supp. 2d at 497). During the second inquiry, plaintiffs are subject to a higher burden of proof because the court has much more information on which to base its decision. Id. (citations omitted).

At that later point, "Defendant can challenge plaintiffs' and any opt-in plaintiffs' claims that it violated the FLSA in one fell swoop after the scope of the collective of plaintiffs is established." Jones v. SCO, Silver Care Operations LLC, 2015 WL 5567355, at *5 (D.N.J. 2015) (citing Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 80 (D.N.J. 2014) ("Because a full evaluation of the merits is not appropriate at this [conditional certification] stage, it is sufficient that Plaintiffs share similar job duties and share a similar business relationship

9

with Defendants."); see also Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (explaining that a collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources, and "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity")).

The Court finds that Plaintiffs have easily met the "fairly lenient standard" of showing the common nexus between the named and opt-in Plaintiffs' status as exempt employees who contend they should actually be classified as non-exempt employees, and the other Home Health and Home Care CSMs in all of Defendant's locations nationwide. Plaintiffs have developed this evidence from the depositions of two named Plaintiffs, two Rule 30(b)(6) witnesses, the declarations of ten additional Opt-Ins, and Defendant's corporate policies and procedures. This evidence is more than adequate for conditional certification.

The next step, therefore, is to determine the method by which potential opt-in plaintiffs are informed of this case and provided the opportunity to join the litigation. Plaintiffs have provided a proposed notice and consent form, and request that notice be disseminated by first class mail, email, and posting in each office's break room. Plaintiffs also ask that Defendant provide them with a list, in electronic format, of all

persons employed by Defendant as Home Health CSMs and Home Care CSMs from three years prior to the date of the Court's order to the present including names, addresses, telephone numbers, dates of employment, locations of employment, social security numbers, and work and personal e-mail addresses.  Defendant objects to practically all of Plaintiffs' proposals.

Now that the Court has granted the conditional certification of Plaintiffs' two nationwide sub-classes, which confers onto Plaintiffs the right to distribute a notice of this putative collective action to all potential opt-in plaintiffs, Defendant is obligated to participate in this process.  See Essex v. Children's Place, Inc., 2016 WL 4435675, at *7 (D.N.J. 2016) (citing Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567, 574 (D.N.J. 2014)) (other citations omitted) ("In FLSA collective action cases, courts routinely order employers to produce a list of potential class members to plaintiffs."). Plaintiff, however, also has an obligation to not demand the moon when the stars are sufficient.  See, e.g., Steinberg v. TD Bank, N.A., 2012 WL 2500331 at *7 (D.N.J. 2012) (citing Bredbenner v. Liberty Travel, Inc., 2009 WL 2391279 at *3 n.3 (D.N.J. 2009) ("Courts generally release social security numbers only after notification via first class mail proves insufficient."); Ritzer v. UBS Financial Services, Inc., 2008 WL 4372784 at *4 (D.N.J. 2008) ("Unless notification via first

class mail proves insufficient, social security numbers and telephone numbers should not be released.")).

Accordingly, the Court will afford the parties thirty days to meet and confer on a form of notice, the method of dissemination of that notice, and the database of employees to which the notice will be distributed.[2] Plaintiffs shall provide the Court with a status update at the expiration of the thirty-day period, if not earlier. Although the Court strongly encourages the parties to come to an agreement on these issues, the parties may inform the Court via letter filed on the docket of any unresolved disputes.

## **CONCLUSION**

For the reasons expressed above, Plaintiffs have met the standard for conditional certification of their two proposed sub-classes on their claims that Defendant violated the FLSA by

---

[2] "District courts have the authority to supervise the notification process, including how much time plaintiffs are given to notify class members, how class members are to be notified, and what contact information plaintiffs are afforded." Steinberg, 2012 WL 2500331 at *6 (citing Hoffmann–La Roche, 493 U.S. at 170-72 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 69 (E.D. Pa. 2009) (defining the appropriate means of notice, determining whether posting notice is appropriate, determining the appropriate notice period, and directing the parties to meet and confer regarding the wording and form of the notice); Ritzer, 2008 WL 4372784 at *4-5 (stating that "courts possess broad discretion to provide court-facilitated notice," authorizing the specific wording of an entire notice provision, and determining an appropriate means of notice)).

classifying Home Health CSMs and Home Care CSMs as exempt instead of non-exempt.  The parties shall have thirty days to meet and confer on the next steps as directed above.  An accompanying Order will be entered.


Date: September 24, 2018                s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.