UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SONYA IVANOVS and KATIE HOFFMAN, *on behalf of themselves and all other similarly situated employees*,<br><br>Plaintiffs,<br><br>v.<br><br>BAYADA HOME HEALTH CARE, INC.,<br><br>Defendant. | 1:17-cv-01742-NLH-AMD<br><br>OPINION |

**APPEARANCES**

MICHAEL JOHN PALITZ
SHAVITZ LAW GROUP, P.A.
830 3RD AVENUE, 5TH FLOOR
NEW YORK, NY 10022

GREGG I. SHAVITZ (admitted *pro hac vice*)
ALAN L. QUILES (admitted *pro hac vice*)
SHAVITZ LAW GROUP, P.A.
1515 SOUTH FEDERAL HIGHWAY, SUITE 404
BOCA RATON, FL 33432

   On behalf of Plaintiffs

MICHAEL D. HOMANS
DAVID M. EISEN
HOMANS PECK LLC
TWO PENN CENTER
1500 JOHN F. KENNEDY BLVD., SUITE 520
PHILADELPHIA, PA 19102

   On behalf of Defendant

**HILLMAN**, District Judge

On September 24, 2018, this Court granted Plaintiffs' motion for the conditional certification of a collective action arising from Defendant's alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), with regard to how Defendant classifies its Client Service Managers as exempt from the minimum wage and overtime requirements of the FLSA. Notice to potential opt-in plaintiffs was issued, 73 plaintiffs "opted-in,"[1] and the parties engaged in extensive discovery. Currently pending before the Court is Plaintiffs' motion for final certification of their collective action, and Defendant's motion to decertify the collective action.[2]

---

[1] In contrast to a Fed. R. Civ. P. 23 class certification in which plaintiffs must "opt-out" of the class, in an FLSA collective action, plaintiffs must "opt-in." Jones v. SCO, Silver Care Operations LLC, 2015 WL 5567355, at *2 (D.N.J. 2015).  Of the 1,300-plus potential class members who received notice, 118 current and former BAYADA employees chose to opt into the collective action.  (Docket No. 139-2 at 7.)  In consideration of Defendant's motion to dismiss non-responsive opt-in plaintiffs, the Court dismissed 45 of those plaintiffs. (Docket No. 169.)  Twelve of those previously non-responsive opt-in plaintiffs expressed their desire to remain in the case after the Court issued an order to show cause as to why they should not be dismissed for their lack of participation, and the Court denied Defendant's motion to dismiss those opt-in plaintiffs.  (Id.)  Based on the Court's calculations, there are currently 73 plaintiffs, which the Court presumes accounts for the two originally named plaintiffs.

[2] Also pending are related motions to seal filed by Plaintiffs [140, 151], and Defendant's motion for leave to file excess pages [146].  The latter motion will be granted *nunc pro tunc*. Plaintiffs' motions to seal will be denied for their failure to comply with L. Civ. R. 5.3(c), as explained in the Order accompanying this Opinion.

The standard to be applied on final certification is whether the proposed collective plaintiffs are "similarly situated." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). "[P]laintiffs must demonstrate by a preponderance of the evidence that members of a proposed collective action are similarly situated in order to obtain final certification and proceed with the case as a collective action." Id. at 537. This standard is different from a determination of the merits of Plaintiffs' claims. See Casco v. Ponzios RD, Inc., 2021 WL 870709, at *8 (D.N.J. 2021) (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, Symczyk, 133 S. Ct. at 1526) (explaining that if the plaintiffs succeed in carrying their burden at the final certification stage, the case may proceed on the merits as a collective action).

For the reasons expressed below, the Court will grant Plaintiffs' motion, and deny Defendant's motion, finding as Plaintiffs relate in their brief, "The primary difference between the conditional certification motion and now is that now there is just far more evidence concerning similarity of the Opt-Ins factual and employment settings." (Docket No. 141-1 at 26.) Whether Plaintiffs will prevail on the merits of their

claims remains to be seen,[3] but Plaintiffs have readily met their burden of showing they are sufficiently similarly situated to proceed as a collective action rather than 73 individual cases. Accordingly, the Court will restate the basis for granting conditional certification, and add supplemental evidence to support the Court's determination that final certification is warranted.

## BACKGROUND

Plaintiffs Sonya Ivanovs and Katie Hoffman, on behalf of themselves and all those similarly situated, allege that Defendant, BAYADA Home Health Care, Inc., unlawfully classifies all of its Client Service Managers ("CSMs") nationwide as exempt from the minimum wage and overtime requirements of the FLSA.

---

[3] Plaintiffs recently filed a motion for summary judgment [171], which is still being briefed, regarding Defendant's good faith defense to the imposition of liquidated damages. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982) ("In 1947, upon the enactment of section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, Congress provided employers with a defense to the mandatory liquidated damage provision of section 216(b). Essentially, the defense provides that the district court has discretion to award no liquidated damages, or to award an amount of liquidated damages less than the amount provided by section 216(b) of the FLSA, if, and only if, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.").

According to Plaintiffs, BAYADA is a home healthcare provider with more than 330 office locations in 21 States, and its operations are generally divided into two primary business lines: Home Health and Home Care. The Home Health business line offices provide home visit services (typically one hour or less) by various medical professionals and paraprofessionals providing nursing, therapeutic, and rehabilitative care primarily on a short-term basis. The Home Care business line offices provide nursing and personal care to people with chronic illness, injury, or disability, primarily on an ongoing shift (two hours or more) basis.

Each office location typically employs one or more CSM. Plaintiff relates that Home Health CSMs and Home Care CSMs perform the same primary duty – filling shifts for nursing and medical paraprofessional care in clients' homes – but the method by which that duty is carried out differs slightly between Home Health CSMs and Home Care CSMs, as do their secondary duties. Ivanovs was a Home Health CSM and Hoffman was a Home Care CSM.

Plaintiffs claim that BAYADA classifies CSMs as exempt despite the fact that it requires CSMs to perform non-exempt duties as their primary duties, including but not limited to: scheduling health care professionals for patients, calling health care professionals for assignments, performing patient intake calls, contacting patient referrals, and verifying

insurance coverage for patients.  Plaintiffs claim that based upon this unlawful exempt classification, BAYADA has willfully refused to pay the CSMs the required overtime compensation for overtime hours worked.

Previously, this Court conditionally certified Plaintiffs' FLSA collective action with two nationwide sub-classes:  Sub-class 1 is BAYADA Home Health CSMs who worked for BAYADA at any location nationwide during the three years prior to the Court's order allowing notice; Sub-class 2 is the BAYADA Home Care CSMs who worked for BAYADA at any location nationwide during the three years prior to the Court's order allowing notice.

As Defendant argued in opposition to Plaintiffs' motion for conditional certification, Defendant again contests final certification because, among other things, Defendant contends that the duties of CSMs differ significantly across its 330 offices, and the determination of whether an employee should be classified as exempt or non-exempt requires a very fact-specific analysis, which is not conducive of a collective action.

## DISCUSSION

**A.   Jurisdiction**

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction

6

pursuant to 28 U.S.C. § 1331.

**B. Analysis**

The court in Pearsall-Dineen v. Freedom Mortgage Corp., 27 F. Supp. 3d 567, 569-71 (D.N.J. 2014) (quoting 29 U.S.C. § 216(b) and following Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242-43 (3d Cir. 2013)), articulated the two-step process by which the FLSA permits an employee who believes his or her right to overtime compensation has been violated to proceed in a collective action, "for and on behalf of himself or themselves and other employees similarly situated":

> The first step analysis begins when a plaintiff moves for conditional certification of a collective action. This step generally "occurs early in the litigation when the court has minimal evidence." The conditional certification process, despite sometimes borrowing the language of class action certification from Federal Rule of Civil Procedure 23, is not really a certification but instead is a "district court's exercise of [its] discretionary power ... to facilitate the sending of notice to potential class members." Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 194 (3d Cir. 2011) (citation omitted), rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013).
>
> When considering the first step of conditional certification, courts apply a "fairly lenient standard" to determine whether the plaintiff has met the "modest factual showing" necessary for certification. Zavala, 691 F.3d at 536 n.4. Under this standard, a plaintiff "must produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. (internal quotation marks omitted) (quoting Symczyk, 656 F.3d at 193). This generally requires review of both the pleadings and affidavits in support of or in opposition to the proposed collective action. A showing that opt-in plaintiffs bring the same

7

> claims and seek the same form of relief has been considered sufficient for conditional certification.
>
> Following conditional certification, a FLSA collective action proceeds to discovery. At or near the conclusion of discovery, a court (upon motion by either the plaintiff for final certification or by the defendant for decertification) proceeds to the final step for certification. Symczyk, 656 F.3d at 193. "It is possible for a class to be certified at stage one but fail certification at stage two." The final certification step requires a plaintiff to establish, by a preponderance of the evidence, that the plaintiff and opt-in plaintiffs are "similarly situated." Zavala, 691 F.3d at 536. Courts make this evaluation on a case-by-case basis . . . .

Pearsall-Dineen, 27 F. Supp. 3d at 569-71 (some citations and quotations omitted).

To support the factual nexus between the manner in which Defendant's alleged policy affected Plaintiffs and the manner in which it affected other employees, Plaintiffs presented the following evidence in support of their motion for conditional certification:

1. BAYADA uses a single, uniform job description for all Home Health CSMs across the country, and another single, uniform job description for all Home Care CSMs across the country. Their job duties included:

   - Coordinating visits from caregivers;

   - Answering client questions;

   - Engaging in customer service;

   - Relaying messages from clients to caregivers and among caregivers;

   - Speaking with referral sources to obtain client information;

8

- Verifying insurance coverage; and

- Submitting routine paperwork.

Plaintiffs state that they performed these non-managerial tasks while working in excess of forty hours per week, and that between 70% and 95% of their time was dedicated to non-exempt duties.

2. BAYADA standardizes its practices and processes at all offices. It does this through hundreds of policies promulgated by the corporate office, and through its New Jersey headquarters and Central Support Services offices. BAYADA has established Home Health and Home Care "Playbooks" that cover every aspect of the company's office operations. Particularly with CSMs, BAYADA trains CSMs through uniform training materials generally applicable to Home Health and Home Care CSMs across the company, including the fact that when a CSM transfers from one office to another, the CSM does not require any additional training to perform his or her duties.

3. The compensation method is the same for CSMs, and all CSMs nationwide are paid on a salaried basis and are not paid overtime.

Discovery conducted after the conditional certification

supports these similarities, and adds many more:

4. BAYADA's corporate headquarters directs the operations of the company from top down. There are five levels of decision-making and management of all of BAYADA's office locations between CSMs and the CEO.

5. BAYADA's corporate headquarters decides whether to pay overtime to its employees, and BAYADA has a common corporate policy not to pay overtime to CSMs, regardless of business line, due to its uniform exempt classification of CSMs.

6. BAYADA has established a culture known as "The BAYADA Way" that permeates all aspects of the company's operations.

7. BAYADA trains CSMs using standard nationwide training materials and online courses through its "BAYADA University" program.

9

8. BAYADA's corporate headquarters disseminates all work rules and procedures that apply to all CSMs throughout the entire organization regardless of the size, location, or region in which they work.

9. BAYADA creates one employee handbook, "Boarding the BAYADA Bus" for CSMs nationwide. This office guide details BAYADA's rules, training programs, office hours, dress code, policies, benefits, and other information applicable to all CSMs across the company.

10. BAYADA publishes hundreds of other stand-alone policies applicable to CSMs, many of which are referenced in Boarding the BAYADA Bus and in the Playbook, including the Time Keeping and Reporting for Office Employees policy.

11. BAYADA mandates uniformity in operations to the smallest level of detail and issues manuals with operating and training policies that apply unvaryingly at all locations nationwide ranging from how to answer the phone, to how to fill a shift, to the color of the walls.

12. BAYADA identically classifies the CSMs in terms of minimum qualifications, training and certifications, primary responsibilities, other responsibilities, and FLSA exemption status across the United States. All CSMs undergo the same corporately derived annual performance review process.

13. BAYADA trains CSMs using standard nationwide training materials and online courses through its "BAYADA University" program.

14. BAYADA CSMs have the same employee compensation and benefits and are uniformly not paid overtime.

15. BAYADA, without exception, classifies all CSMs as exempt with no regard to the size, sales volume, geographic location or hours of operation of the office where the CSM works; the CSM's tenure; or the supervisor or manager to whom the CSM reports.

16. BAYADA classifies all CSMs as exempt without taking into account (1) office size, (2) office patient or sales volume, (3) office location, (4) the CSMs' tenure with BAYADA, (5) the CSMs' experience, (6) the business line

>   (home care or home health, (7) the office's specialty, or (7) the Director that supervises the CSM.

To assess whether this evidence presents a preponderance of the evidence to show that Plaintiffs are "similarly situated," courts in the Third Circuit consider several factors: (1) whether the plaintiffs are employed in the same corporate department, division, and location; (2) whether they advance similar claims; (3) whether they seek substantially the same form of relief; (4) whether they have similar salaries and circumstances of employment; and (5) whether they have similar or individualized defenses. Casco v. Ponzios RD, Inc., 2021 WL 870709, at *8 (D.N.J. 2021) (citing Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 537 (3d Cir. 2012); Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 226 (3d Cir. 2016)). The degree of fairness and procedural impact of certifying the action as a collective action are also relevant to this analysis. Id.

In opposition to final certification and in support of its request to decertify the collection action, Defendant argues: each individual plaintiff worked at a different location across 13 different states, each with a different supervisor providing different guidance as to work, management and timekeeping, and different staffing levels; the opt-ins worked in seven different home health practice areas, roughly divided between Home Health

11

and Home Care, ranging from pediatric services to hospice care, each with its own different demands as to expertise, caseload management and scheduling; by their own admission, the class members exercised widely varying managerial duties, administrative duties, discretion and judgment, including dissimilar facts as to supervising employees, setting their pay rates, scheduling their work, evaluating employees, disciplining employees, recruiting and hiring employees, and managing profitability and gross margins of their CSM caseloads; the opt-ins worked varied time frames, some in 2014 only, others starting in early 2018, and every period in between – and for periods that vary from three months to more than five years; the CSMs worked different "on-call manager" duties, with some doing none, others performing it a few times a year, and still others claiming on-call management duties every week; and each opt-in claims to have worked different hours and each recorded his or her time in different ways, with some admitting their certified time entered into BAYADA's system was accurate, while others contend they made false certifications of their time each week, and still others claim they accurately certified their time in some weeks, but reported false entries in others.

    Defendant further argues that individualized defenses as to each opt-in, further complicates the presentation at trial and makes a collective action trial inefficient.  Defendant also

12

argues that a collective action of 70-plus CSMs, all with different supervisors, varied duties and decision-making, and other challenges will make the case unmanageable and unfair to BAYADA.

The Court is not persuaded by Defendant's arguments.  Of primary consideration is that Defendant's uniform policies for every CSM regardless of location, as implemented through the BAYADA University, BAYADA Playbook, and BAYADA Bus, undermine Defendant's argument regarding inefficiency, unfairness, and individualized defenses.  To the contrary, it appears to the Court that collective treatment of the 73 Plaintiffs would promote efficiency, fairness, and limit individualized defenses, to Defendant's benefit as well as Plaintiffs'.[4]  While the existence of uniform policies is not dispositive, it is strong evidence to support Plaintiffs' burden of showing how they are similarly situated. See Rivet v. Office Depot, Inc., 207 F. Supp. 3d 417, 424 (D.N.J. 2016) (citations omitted) (explaining that "the existence of uniform policies and procedures is not dispositive," and "the imposition of uniform policies does not guarantee that all ASMs will be identical," but "it does suggest

---

[4] See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (explaining that a collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources, and "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity").

13

that their roles will be substantially similar").

As for the individual differences between Plaintiffs, Defendant relies upon the minutia of each Plaintiff's work day and the job duties listed on some Plaintiffs' resumes and LinkedIn profiles to argue against this case proceeding as a collective action. Courts, however, "have routinely held [that] [p]laintiffs do not need to be identical to be similarly situated for purposes of an FLSA collective action." Ruffin v. Avis Budget Car Rental, LLC, 2014 WL 294675, at *3 (D.N.J. 2014) (citing Stillman v. Staples, Inc., No. 07-849, 2009 WL 1437817, at *18 (D.N.J. May 15, 2009) (other citations omitted). "Minor factual deviations do not defeat collective treatment." Id. (citation omitted).

Defendant also argues that this individualized evidence and inconsistencies in testimony cannot support collective treatment of this case. It will be necessary for the factfinder to assess the credibility of the representative Plaintiffs' testimony regarding whether their job is more administrative, and therefore non-exempt, rather than managerial and exempt. On the current record, however, Plaintiffs have demonstrated that despite some minor differences between how each Plaintiff performs his or her job, the preponderance of the evidence shows that overall Defendant treats its CSMs in a uniform way, and CSMs accordingly perform their jobs in a uniform way. See

14

Rivet, 207 F. Supp. 3d at 427-28 ("Office Depot largely argues that representative testimony is problematic because many of the testifying ASMs are not credible. However, if that were enough to defeat final certification, FLSA actions could never proceed on a collective basis whenever witness credibility was at issue. Such an extreme view contravenes the well-settled principle that the FLSA should be liberally construed to achieve its purpose. The Court is confident that Office Depot can make its credibility arguments on a collective basis.") (citing Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959); Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994)) (other citations omitted).

The Third Circuit has noted that "the task on final certification is determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," which is "impossible unless Plaintiffs can at least get over the line of 'more likely than not,'" but "[a]t the same time, a stricter standard would be inconsistent with Congress' intent that the FLSA should be liberally construed." Zavala, 691 F.3d at 537 (citation omitted). Here, Plaintiffs have readily "gotten over the line" and shown by a preponderance of the evidence that it is "more likely than not" they are similarly situated so that they may obtain final certification

15

and proceed with the case as a collective action.[5]

## CONCLUSION

For the reasons expressed above, Plaintiffs have met the standard for final certification of their two proposed sub-classes on their claims that Defendant violated the FLSA by classifying Home Health CSMs and Home Care CSMs as exempt instead of non-exempt.  Plaintiffs' motion for final certification will be granted, and Defendant's motion to decertify the collection action will be denied.

An accompanying Order will be entered.


Date: August 6, 2021                s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

[5] Defendant states that the "precedents" cited in their motion for decertification "point the way" to the conclusion that "the variety of defenses and credibility challenges as to each CSM will not lend themselves to collective treatment." (Docket No. 139-2 at 39.)  The Court disagrees not only in substance, but also because the majority of cases cited by Defendant to support its position are from outside this District and the Third Circuit.

16