# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SONYA IVANOVS, et al.,

                              Plaintiffs,

v.
                                         Case No.:
                                         1:17−cv−01742−NLH−AMD
                                         Judge Noel L. Hillman

BAYADA HOME HEALTH CARE,
INC.,

                              Defendant.

## <u>FIRST AMENDED JOINT FINAL PRETRIAL ORDER</u>

       The following shall constitute the First Amended Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e). Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

Michael Palitz
**SHAVITZ LAW GROUP, P.A**
800 3rd Avenue, Suite 2800
New York, NY  10022
Telephone: (800) 616-4000
Facsimile: (561) 447-8831
mpalitz@shavitzlaw.com

Gregg I. Shavitz*(admitted *pro hac vice*)
Alan L. Quiles* (admitted *pro hac vice*)
**SHAVITZ LAW GROUP, P.A**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
gshavitz@shavitzlaw.com
aquiles@shavitzlaw.com

Brendan J. Donelon (admitted *pro hac vice*)
**DONELON, P.C.**
4600 Madison, Suite 810
Kansas City, Missouri
Telephone: (816) 221-7100
Facsimile: (816) 709-1044
brendan@donelonpc.com

**Counsel for Plaintiffs**

Michael D. Homans
**HOMANS PECK, LLC**
1500 J. F. Kennedy Blvd., Ste. 520
Philadelphia, PA 19102
Telephone: (215) 419-7477
mhomans@homanspeck.com

Gabrielle Talvacchia - admitted *pro hac vice*
**HOMANS PECK, LLC**
1500 J. F. Kennedy Blvd., Ste. 520
Philadelphia, PA 19102
Telephone: (215) 419-7463

**Counsel for Defendant BAYADA Home Health Care, Inc.**

**PART I. JURISDICTION and BRIEF SUMMARY OF THE CASE:**

This Court has federal question jurisdiction over this Fair Labor Standards Act ("FLSA")

certified collective action pursuant to 28 U.S.C. § 1331 and section 16(b) of the FLSA.  This

Court has jurisdiction over the Parties in this action in that Named Plaintiff Sonya Ivanovs is a

resident of New Jersey, and Defendant has its principal place of business in New Jersey.

Plaintiffs, who are former and current employees of Defendant BAYADA Home Health

Care, Inc. ("BAYADA"), worked in the position of Client Services Manager.  They claim that

their primary duty was non-exempt clerical and office work, and that BAYADA improperly

classified them and all Client Services Managers as exempt from overtime pay under the FLSA.

Plaintiffs claim that they are entitled to overtime pay for each week in which they worked more

than 40 hours.

BAYADA contends that the Client Services Managers are and were properly classified as

salaried exempt employees under the FLSA, as each Client Services Manager is paid a base

salary above the FLSA minimum, and the primary duty of each Client Services Manager is the

performance of exempt executive and administrative work.

**PART II. STIPULATED FACTS:**

1.      BAYADA employs exempt Client Services Managers at locations in the United States.

2.      The plaintiffs who will testify in this matter worked in different locations for BAYADA.

3.      Specifically, BAYADA employed Named Plaintiff Ivanovs as a Home Health Client Services Manager in New Jersey from July 9, 2012, through July 15, 2014.

4.      BAYADA employed Named Plaintiff Hoffman as a Home Care Client Services Manager in Minnesota from September 30, 2013, through July 19, 2015.

5.      The names, work locations and dates of employment with BAYADA of each of the 67 plaintiffs, including the two Named Plaintiffs, are listed in the joint Exhibit A attached hereto.

6.      BAYADA classified all Client Services Managers, including the 67 plaintiffs listed in Exhibit A, as exempt from the overtime requirements of the FLSA throughout their employment as Client Services Managers for BAYADA.

7.      BAYADA paid each of the 67 plaintiffs a base salary each week throughout her employment as a Client Services Manager and did not pay any overtime premium.

8.      While the base salaries varied for each plaintiff, all were paid at a level above the minimum required by the FLSA for exempt positions.

9.      BAYADA also paid each of the 67 plaintiffs incentive pay or bonuses.

10.     BAYADA wrote and used job descriptions for Home Health Client Services Managers and for Home Care Client Services Managers, which each Client Services Manager received at the beginning of her employment.

11.     BAYADA is an "employer" as that term is defined in the FLSA, and has been an employer throughout the employment of each of the plaintiffs listed in Plaintiffs listed in Exhibit A.

12.     During their employment as Client Services Managers for BAYADA, the plaintiffs listed in Exhibit A were all "employees" of BAYADA as that term is defined in the FLSA.

**PART III. EACH PLAINTIFF'S CONTESTED FACTS:**

**A.  Plaintiffs intend to prove the following contested facts with regard to liability, through the introduction of representative evidence:**

1.     Plaintiffs listed in Exhibit A regularly worked more than 40 hours per workweek during their employment as BAYADA Client Services Managers ("CSMs") with Defendant's knowledge.

2.     Plaintiffs listed in Exhibit A did not receive one and one-half their regular rate of pay when they worked more than 40 hours per workweek during their employment as BAYADA CSMs.

3.     During their employment as CSMs for BAYADA, the primary duty of the plaintiffs listed in Plaintiffs' Exhibit A was clerical, general office, and manual work.

4.     During their employment as CSMs for BAYADA, the clerical, general office, and manual work performed by the plaintiffs listed in Exhibit A were the most important of all of their duties as CSMs.

5.      During their employment as CSMs for BAYADA, the clerical, general office, and manual work performed by the plaintiffs listed in Exhibit A consumed a significantly greater amount of work time than any managerial work they performed.

6.      During their employment as CSMs for BAYADA, BAYADA closely supervised the plaintiffs listed in Exhibit A.

7.      During their employment as CSMs for BAYADA, the effective hourly rate for plaintiffs listed in Exhibit A was not significantly higher than the hourly rate BAYADA paid to hourly field employees.

8.      Clinical Managers and Directors, not CSMs, were primarily responsible for directing the work of the field employees for the offices where the plaintiffs listed in Plaintiffs' Exhibit A worked.

9.      During their employment as CSMs for BAYADA, the plaintiffs listed in Exhibit A did not customarily or regularly perform office or non-manual work directly related to managing BAYADA's general business operations, or the business operations of BAYADA's customers.

10.     During their employment as CSMs for BAYADA, the plaintiffs listed in Exhibit A did not customarily or regularly exercise discretion and independent judgment with respect to matters of significance.

11.     During their employment as CSMs for BAYADA, the plaintiffs listed in Exhibit A did not customarily or regularly hire, fire, promote, or change the status of the field employees, nor were their recommendations on such issues customarily or regularly given particular weight.

12.     During their employment as CSMs for BAYADA, the salary paid to plaintiffs listed in Exhibit A was intended to compensate them for a 40-hour workweek.

13.     During their employment as CSMs for BAYADA, BAYADA willfully misclassified the plaintiffs listed in Exhibit A as exempt from the overtime provisions of the FLSA.

**B. Plaintiff intends to prove the following contested facts with regard to damages, through the introduction of representative evidence and Defendant's business records:**

1.     The weekly pay BAYADA paid to Plaintiffs listed in Exhibit A was intended to compensate them for a 40-hour workweek.

2.     Based on representative testimony presented at trial, during their employment as CSMs for BAYADA, the plaintiffs listed in Exhibit A worked unpaid overtime during workweeks in which they worked a full week.

3.     Plaintiffs listed in Exhibit A worked the number of full workweeks as reflected in BAYADA's payroll records during the relevant limitations period, as determined by each opt-in plaintiff's opt-in date and the parties' tolling agreement fully executed by the parties on January 19, 2017 and the agreed tolling period after the filing of this lawsuit.

4.     The amount of total damages will be determined at the conclusion of the liability phase.  The amount is contingent on:  The Court's determination of the applicable tolling period; whether the jury finds that BAYADA's violation of the FLSA was willful; whether the Court finds post-trial that BAYADA acted in good faith in its classification of the plaintiffs listed in Plaintiffs' Exhibit A as exempt; the jury's determination of whether the CSMs' salaries were intended to cover 40 hours per workweek or whether they were intended to cover "all hours worked;" and the jury's determination of the amount of damages owed to the Plaintiffs.

5.      Although Defendant consulted with counsel with regard to classifying CSMs as exempt from the overtime provisions of the FLSA, Defendant did not rely on legal advice or any consultation with its counsel in making its determination to classify the plaintiffs listed in Plaintiffs' Exhibit A as exempt from the overtime provisions of the FLSA.

**PART IV. EACH DEFENDANT'S CONTESTED FACTS:**

**A. Defendant intends to prove the following contested facts with regard to liability:**

1.      BAYADA was founded in 1975 by Mark Baiada, with home-care therapy services being provided in the Philadelphia and southern New Jersey areas, and is now headquartered in Moorestown, N.J.

2.      BAYADA has since grown to more than 22 states.

3.      BAYADA's services cover the full range of home health care from pediatric services for infants and children who need round-the-clock care at home, to visiting nurses, to hospice care at home.

4.      The 67 plaintiffs in this case worked in more than 60 different offices around the country, with different supervisors, different practice areas, and variations on how their local offices operated.

5.      BAYADA created job descriptions, policies and practices for the Client Services Manager position that reflected the exempt managerial and administrative duties required and expected of the position and communicated those job descriptions and duties to all Client Services Managers.

6.      Each plaintiff in this case, when she started working for BAYADA, received and signed off on her Client Services Manager job description, which summarized the duties of the position.

7.     Each Client Services Manager has as her main and primary duty to manage, develop and grow her assigned caseload of clients being served by BAYADA field workers, including nurses, therapists, and home health aides.

8.     Another primary responsibility is to manage and participate in human resources and personnel management duties of more than two fulltime equivalent employees, including training, recruitment, interviewing and hiring of field staff, approving and handling staff payroll, involvement in setting and adjusting staff wage rates including incentive pay, conducting written performance reviews for field employees, and coaching, discipline and termination, when needed.

9.     Although terminations and formal discipline are not common, the input and recommendations of Client Service Managers are given serious consideration and weight by office Directors.

10.    Another primary duty is to schedule field staff and apportion their work, which includes a variety of challenging tasks, and the regular exercise of judgment and discretion.

11.    Another primary duty is effective fiscal management of the caseload, including monitoring and managing staff utilization and growing the gross margin.

12.    These are the most important duties of Client Services Managers.

13.    Client Service Managers and other managers perform routine clerical duties in support of their exempt primary duties because it is part of the overall job and BAYADA expects all employees, including managers, to contribute to running the office. That supportive work is closely related to their primary duties set forth above and does not change their exempt status.

14.    In most BAYADA field offices, the three top managers are the Director, the Client Services Manager, and the Clinical Manager.  The Client Services Managers are in charge

8

of all business and non-clinical aspects of their caseloads, while the Clinical Managers are in charge of the clinical services (hands-on care) delivered to BAYADA clients.

15.     Although the practices vary by office, most Client Service Managers have regular daily, weekly, and monthly management meetings to monitor and discuss the client caseloads, any issues, staffing, recruiting needs, and gross margin performance against targets among other management topics.

16.     Many Client Services Managers also handle on-call time at nights and on weekends, when they are the only managers working and are put in charge of handling all emergencies, issues and calls that come in during these periods.

17.     The plaintiffs who will testify in this matter admitted to their managerial and exempt duties at BAYADA in their resumes and/or social media profiles.

18.     BAYADA paid each Client Services Manager a weekly salary designed to cover all hours worked for the week, as exempt employees are not paid hourly wages or overtime pay.

19.     Client Services Managers earned total yearly compensation from about $40,000 to more than $100,000, depending on their practice area, tenure, and performance.

20.     BAYADA categorized its Client Services Managers as exempt executive and administrative employees.

**B. Defendant intends to prove the following contested facts with regard to damages:**

1.     Each representative plaintiff recorded her time on BAYADA's system on a weekly basis.

2.     Each plaintiff verified to BAYADA each week in writing that the time she recorded was accurate and stated all hours worked during the pay period.

3.    The plaintiffs' recording of their hours worked on BAYADA's system varies widely, with some reporting work over 40 hours most weeks, some recording 40-plus hours only sometimes, and others recording 40 or fewer hours worked every week.

4.    BAYADA paid each Client Services Manager a weekly salary designed to cover all hours worked for the week, as exempt employees are not paid hourly wages or overtime pay. Instead, they are paid a salary and bonuses to do a job, as is the case with most managers.

5.    The plaintiffs took paid days off or chose to not work full weeks on approximately 25% of their workweeks at BAYADA, meaning they did not work 40 hours or more in those weeks. That time off is documented in BAYADA's payroll records.

6.    BAYADA's workweek included a 30-60 minute lunch break every day, with no deduction in pay.

7.    In 2006, a federal judge in Philadelphia affirmed in a written decision, *Goff v. Bayada Nurses, Inc*., 424 F. Supp. 2d 816 (E.D. Pa. 2006), that an employee in the position of Staff Supervisor, the name previously used for Client Services Manager, was exempt from overtime pay under the executive and administrative exemptions, and a combination thereof, under the Fair Labor Standards Act.

8.    Even more management duties and discretion have been added to the job since the *Goff* decision.

9.    BAYADA relied in good faith on this federal court decision, as well as direct knowledge of the duties and requirements of the position in managing the enterprise, managing other employees, and exercising independent judgment and discretion, in maintaining the position as exempt through the period at issue in this lawsuit.

10.     At no time did BAYADA know or understand the position of Client Services Manager to be non-exempt under the Fair Labor Standards Act.

11.     At no time prior to plaintiffs' lawyers contacting BAYADA did any Client Services Manager or an attorney for any employee claim the position of Client Services Manager was not an exempt manager and should have been paid hourly wages and overtime under the Fair Labor Standards Act.

12.     Even when 1,300-plus past and present Client Services Managers were provided with official, written notice of their ability to join this lawsuit and claim they were non-exempt clerical employees entitled to overtime pay, the vast majority of Client Services Managers (more than 90 percent) did not join it.

13.     At no time did BAYADA show willful or reckless indifference to the law in categorizing the Client Services Manager position as exempt.

**PART V. WITNESSES and SUMMARY OF TESTIMONY:**

Only the witnesses whose names and addresses are listed herein will be permitted to testify at the time of trial. For each witness listed, there must be a description of their testimony. Any objection to a witness must be noted by opposing counsel and for each such witness objected to, the name of the witness and the reason for the objection shall be given.

**A. Plaintiffs' Witnesses and Summary of Their Testimony**

**Plaintiffs intend to call the following witnesses with regard to liability and anticipate they will testify as follows:**

1. Kristen Crighton (Alternative #2), c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay,

and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

2. Anika Downer (Alternative #3), c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

3. Josie Gupton, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay.  They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

4. Christina Hess, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay.  They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

5. Katie Hoffman, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay.  They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

6. Sonya Ivanovs, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay.  They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision.  This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

7. Jenna McWilliam (Alternative #4), c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision. This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

8. Tiffany Potteiger, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision. This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

9. Deidra Taylor (Alternative #1), c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision. This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

10. Adriana Vargas-Smith, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision. This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

11. Blaire Yarbrough, c/o Plaintiffs' counsel, will testify as to their daily job duties, responsibilities, and authority and how those relate, if at all, to the elements of the FLSA's executive and administrative exemptions to overtime pay. They will also testify as to the elements that define one's primary duty such as time spent performing certain job duties, importance of nonexempt job duties, rate of pay, and freedom of supervision. This person will also testify to hours worked. Will testify to rate of pay our hourly field staff.

12. Cristin Toscano, c/o Defense Counsel, will testify about Plaintiffs' pay and method of payment. They will also testify about Bayada policies relevant to duties, timekeeping and pay. They will testify about CSM training. They will testify about the efforts

made or not made by Bayada to properly classify CSMs.  They will testify about CSM duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization.  They will testify about the duties, pay and salaries for office employees and field staff.

13. Erica Kjenstad, c/o Defense Counsel, will testify about Plaintiffs' pay and method of payment.  They will also testify about Bayada policies relevant to duties, timekeeping and pay. They will testify about CSM training.  They will testify about the efforts made or not made by Bayada to properly classify CSMs.  They will testify about CSM duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization.  They will testify about the duties, pay and salaries for office employees and field staff.

14. Lisa Stanley c/o Defense Counsel, will testify about Plaintiffs' pay and method of payment.  They will also testify about Bayada policies relevant to duties, timekeeping and pay. They will testify about CSM training.  They will testify about the efforts made or not made by Bayada to properly classify CSMs.  They will testify about CSM duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization.  They will testify about the duties, pay and salaries for office employees and field staff.

15. Matthew Delle Cave, c/o Defense Counsel, will testify about Plaintiff Vargas Smith's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

16. Mike Ferrina, c/o Defense Counsel, will testify about Plaintiff Hess' pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

17. Richard Hopson, c/o Defense Counsel, will testify about Plaintiff Gupton's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

18. Sharon Mrozinski, c/o Defense Counsel, will testify about Plaintiff Crighton's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

19. Doug McNew, c/o Defense Counsel, will testify about Plaintiff Crighton's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

20. Tim Peterkin, c/o Defense Counsel, will testify about Plaintiff Taylor's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

21. Cathy Sorenson, c/o Defense Counsel, will testify about Plaintiff McWilliam's pay and method of payment.  They will testify about timekeeping.  They will testify about her duties, time spent performing duties, and level of discretion.  They will testify about Bayada's reporting structure and corporate organization in their office.  They will testify about the duties, pay and salaries for office employees and field staff in their office.

**Plaintiffs intend to call the following witnesses with regard to damages and anticipate they will testify as follows:**

1. Plaintiffs intend to primarily utilize Defendant's business records at to the number of full workweeks worked by the plaintiffs listed in Exhibit A, their respective dates of employment, and their rates of compensation.  Then, based on determinations made by the jury regarding "willfulness" and number of hours the salary was intended to cover each week as referenced above and below, and determinations of fact by the jury during the liability phase of the case, apply those determinations to Defendant's business records.  This analysis will be done using mathematical facts and formulas applied to such business records, and a Plaintiffs will prepare a final working spreadsheet of the damages using these calculations. Plaintiffs intend to call a witness, Nicoletta Roditti, to merely explain the math, the application of the findings

of the jury, and present the final amount of damages.  This witness will not offer opinions or analysis beyond what is described herein.

**B. Defendant's Objections to Plaintiff's Witnesses:**

1. BAYADA objects to Plaintiffs' vague recitation of their proposal to prove damages through a paralegal's testimony (never identified as a witness in this case) as to an unknown calculation. Plaintiffs must set forth and prove the damages and establish the alleged hours worked as to each representative plaintiff – and they must be subject to cross-examination – and set forth a specific plan for any plaintiffs who do not testify at trial.  If plaintiffs propose to use BAYADA's business records to establish the weeks and hours worked, then BAYADA may be agreeable to a summary presentation for such witnesses.

**C. Defendant's Witnesses and Summary of Their Testimony**

**Defendant intends to call the following witnesses with regard to liability and anticipates they will testify as follows:**

1. Matt Delle Cave, Division Director at BAYADA, c/o BAYADA's counsel, will testify as to his experiences working with opt-in Adriana Vargas-Smith, and the work of CSMs in the Division that included her Downington Nursing Office, and BAYADA requirements and expectations for the role in that Division.

2. Anika Downer, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her employment with BAYADA and the duties, expectations, requirements, and hours of her CSM position.

3. Michael Ferrina, former Division Director in Denver area, c/o BAYADA's counsel, will testify as to the work of CSMs in the Division that included Christina Hess.

4. Josie Gupton, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her employment with BAYADA and the duties, expectations, requirements, and hours of her CSM position.

5. Richard Hopson, Regional Director of Operations for the Southeast and former Division Director over Charlotte office, c/o BAYADA's counsel, will testify as to his experience working with opt-in Josie Parker Gupton and her exit interview.

6. Ashley Johnson, CSM and former opt-in, 6314-A Old Pineville Road, Charlotte, North Carolina 28217, will testify as to her employment with BAYADA and the duties, expectations, and requirements of the CSM position.

7. Erica Kjenstad, Director, c/o BAYADA's counsel, will testify as to BAYADA expectations and requirements as to the CSM position, and as to her knowledge of

16

Katie Hoffman's work at BAYADA, BAYADA's requirements and expectations for the role in that Division, and BAYADA's good faith in designating the position as exempt.

8.  Douglas McNew, Area Director and former Director, c/o BAYADA's counsel, will testify as to his experiences working with opt-in plaintiff, Anika Downer, and the work of CSMs in the Division and office in which she worked, and BAYADA's requirements and expectations for the role in that Division.

9.  Sharon Mrozinski, Divisional Client Service Manager for BAYADA and former CSM, c/o BAYADA's counsel, will testify as to her experiences working with Kristin Crighton in her Maryland office, the work of CSMs in the Division and office in which Ms. Crighton worked, and BAYADA requirements and expectations for the role in that Division.

10. Timothy Peterkin, Area Director and formerly Director of BAYADA, c/o BAYADA's counsel, will testify as to his experiences working with Deidre Taylor, the work of CSMs in the office in which Taylor worked, and BAYADA requirements and expectations for the role in that Division.

11. Barbara Slotnick, Director, c/o BAYADA's counsel, will testify as to her experiences working with named plaintiff, Sonya Ivanovs, the work of CSMs in the offices in which Ivanovs worked, and BAYADA requirements and expectations for the role in that Division.

12. Cathy Jane Sorenson, former Division Director for BAYADA, c/o BAYADA's counsel, will testify as to her experiences working with opt-in plaintiff Jenna McWilliam, the work of CSMs in the offices in which McWilliam worked, and BAYADA requirements and expectations for the role in that Division.

13. Lisa Stanley (Home Health), Division Director, c/o BAYADA's counsel, will testify as to her experiences working with name plaintiff Sonya Ivanovs, the work of CSMs in the Division in which Ivanovs worked, BAYADA's good faith in designating the position as exempt, and BAYADA requirements and expectations for the role in that Division.

14. Deidre Taylor, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her employment with BAYADA and the duties, expectations, requirements, and hours of her CSM position.

15. Cristen Toscano (Home Care), Chief Operating Officer of Skilled Nursing Unit, c/o BAYADA's counsel, will testify as to the work of CSMs at BAYADA, BAYADA's good faith in designating the position as exempt, and BAYADA requirements and expectations for the role.

16. Adriana Vargas-Smith, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her employment with BAYADA and the duties, expectations, requirements, and hours of her CSM position.

17. Blaire Yarbrough, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her employment with BAYADA and the duties, expectations, requirements, and hours of her CSM position.

**Defendant intends to call the following witnesses with regard to damages and anticipates they will testify as follows:**

1. Anika Downer, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

2. Josie Gupton, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

3. Deidre Taylor, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

4. Adriana Vargas-Smith, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

5. Blaire Yarbrough, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

6. Matt Delle Cave, Division Director at BAYADA, c/o BAYADA's counsel, will testify as to the hours worked by opt-in Adriana Vargas-Smith, and the office hours of her Downington Nursing Office.

7. Richard Hopson, Regional Director of Operations for the Southeast and former Division Director over Charlotte office, c/o BAYADA's counsel, will testify as to the hours worked by opt-in Josie Parker Gupton, and the office hours of her office.

8. Erica Kjenstad, Director, c/o BAYADA's counsel, will testify as to BAYADA's reasons for designating the position as exempt, Katie Hoffman's hours worked and compensation paid, and the hours of her office.

9.  Douglas McNew, Area Director and former Director, c/o BAYADA's counsel, will testify as to will testify as to the hours worked by opt-in Anika Downer, and the office hours of her office.

10. Sharon Mrozinski, Divisional Client Service Manager for BAYADA and former CSM, c/o BAYADA's counsel, will testify as to the hours worked by Kristin Crighton and the office hours in her office.

11. Timothy Peterkin, Area Director and formerly Director of BAYADA, c/o BAYADA's counsel, will testify as to the hours worked by Deidre Taylor and the office hours in her office.

12. Barbara Slotnick, Director, c/o BAYADA's counsel, will testify as to the hours worked by named plaintiff, Sonya Ivanovs and the office hours of her office.

13. Cathy Jane Sorenson, former Division Director for BAYADA, c/o BAYADA's counsel, will testify as to the hours worked by opt-in plaintiff Jenna McWilliam, and office hours of the offices in which she worked.

14. Lisa Stanley (Home Health), Division Director, c/o BAYADA's counsel, will testify as to the hours and compensation of name plaintiff Sonya Ivanovs and her office's hours, and BAYADA's reasons and good faith in designating the position as exempt.

15. Deidre Taylor, opt-in plaintiff, c/o Plaintiffs' counsel, will testify as to her hours worked and the time she recorded and verified to be true when employed at BAYADA.

16. Cristen Toscano (Home Care), Chief Operating Officer of Skilled Nursing Unit, c/o BAYADA's counsel, will testify as to BAYADA's reasons and good faith in designating the position as exempt, and as to the compensation, payroll records, time records, and practices of BAYADA with regard to CSMs, including the opt-in plaintiffs.

**D. Plaintiff's Objections to Defendant's Witnesses:** If there are no objections to any of the witnesses, plaintiff shall so state that in this portion of the Order. If there are objections to any of defendant's witnesses, they shall be listed here:

1.  Plaintiffs object to Barbara Slotnick offering testimony in this case. Lisa Stanley was deposed in her capacity as a corporate representative and as to the employment of Sonya Ivanovs. This witness was not previously deposed or identified as an additional witness for Ms. Ivanovs' employment, and any such testimony would be unduly duplicative.

## PART VI. EXPERT WITNESSES:

Neither party will present an expert witness.

## PART VII. EXHIBITS

Absent an extraordinary showing of good cause, ONLY THE EXHIBITS LISTED BELOW
SHALL BE INTRODUCED AT THE TIME OF TRIAL. The Parties are not required to list
exhibits that will be used, if at all, only for impeachment purposes. Counsel are reminded that
each such exhibit shall be physically pre-marked corresponding to the designation below. Copies
of exhibit lists shall be provided to the District Judge and the assigned court reporter at the time
of trial.

### A. Plaintiff's Exhibits

**Plaintiff intends to introduce the following exhibits into evidence (Listed by BAYADA
Bates number, unless otherwise noted):**

1. 1-2     Screen shot of hours reported verification box
2. 4-5     7/27/11 Hess   Email Offer letter
3. 6-8     3/15/12 Onboarding checklist, Director version, with boxes checked
4. 9-11    5/3/13  Hess CSM Performance Appraisal
5. 12      6/2008 Job Description CSM from BAYADA Nurses
6. 13      7/2014  Hess Resignation letter
7. 14      10/22/13 Hess CSM offer letter
8. 15      8/17/11 Hess signed Job Description, On Call Mgr. BAYADA Nurses
9. 16      2/6/12  Hess signed Job Description
10. 17-18  11/14/13 Hess signed Job Description, 0-2063 6/08, CSM Home Care. BAYADA
11. 19-20  2/18/08 Time Keeping and Reporting Policy for Office Staff, rev. 8/22/16
12. 21-23  8/22/16 Policy Time Keeping and Reporting for Office Employees, rev. 8/22/16
13. 24-25  6/2008  Job Description CSM Home Care, BAYADA
14. 26-28  11/2014 Job Description CSM 1 & 2, Home Health
15. 31     4/1/14 Hoffman ALDP completion letter/CSM offer
16. 34-38  4/21/15 Hoffman CSM Perf. Appraisal
17. NA     8/17/17 Home Care Office Org Chart, Doc. 0-4435
18. 40 & 502     6/20/12 Ivanovs Offer letter
    18.A  39.    4/3/14 Email to Hoffman
19. 41-44  7/22/13 Ivanovs CSM Perf. Appraisal, signed by client 9/10/13
20. 45-46  1/8/14  Ivanovs Memo re counselling
21. 47-48  6/2008 Job Description, CSM Home Health BAYADA
22. 49     2/12/13 Ivanovs FMLA Forms
23. 50-54  5/21/14 Ivanovs PIP
24. 89-93  Hoffman On-Boarding checklist with checkmarks

25. 94      9/30/13 Hoff Training schedule, week 1
26. 134     4/1/14 Hoffman offer letter
27. 135     4/23/15 Hoffman Personnel Change Notice
28. 136     4/4/14  Hoffman Personnel Change notice
29. 142     9/12/13 Hoffman Salary recommendation
30. 144-45 9/30/13 Hoffman 5/07 Admin Agreements of Standards for Office Employees
31. 146     9/30/13 Hoffman Honesty and Confidentiality Agreement, 2/2013
32. 149-52 4/28/14 Hoffman Perf. Appraisal
33. 156-60 4/21/15 Hoffman Performance Appraisal
34. 161-62 1/29-30/15 Hoffman Emails re client
35. 163-66 11/13 Hoffman Various Training Certificates
36. 178-82 12/6/13 Hoffman CIS and CRIS certification checklist
37. 205     4/3/14  Hoffman ALDP completion/CSM assignment email
38. 206     6/29/15 Hoffman resignation letter
39. 207     7/17/15 Hoffman personnel change re resignation
40. 208-56 var. Hoffman Counselling Reports and Reviews
41. 257-58 7/6/14 Hoffman Email
42. 259-482 var. Hoffman Counselling Reports and Reviews by Hoffman
43. 344 7/21/2014 Email re leave
44. 489     6/22/12 Ivanovs Agreement of standards for employees form 5/06
45. 499-503 6/20/12 Ivanovs Offer Letter and work history investigation
46. 510     7/10/12 Ivanovs Honesty and confidentiality agreement form 9/08
47. 512-13 Ivanovs Personnel file checklists
48. 515     7/11/12 Ivanovs Email, hire approval
49. 516     7/5/12  Ivanovs Email, hire pending
50. 518-21 7/22/13 Ivanovs Performance review signed 9/22
51. 522-23 8/20/13 Ivanovs Memo by Janice Taggart
52. 524     11/12/13 Ivanovs Memo by Taggart
53. 533     12/10/13 Ivanovs memo by Slotnick
54. 534-35 1/8/14 Ivanovs memo by Slotnick
55. 536-39 3/21/14 Ivanovs BAYADA hero
56. 557-8  6/08 Job Description CSM Home Health 0-3808
57. 598-99 5/21/14 Ivanovs PIP workflow
58. 600-01 5/20/14 Ivanovs Counselling rprt
59. 602     5/27/14 Ivanovs Training and support plan
60. 603-06 7/1/14  Ivanovs PIP progress report
61. 610     7/11/14 Ivanovs Inservice – emails
62. 612-13 7/11/14 Ivanovs Inservice – domestic violence
63. 614-15 2/24/14 Ivanovs Agreement of Standards, form 1285, 5/07
64. 616     7/11/14 Ivanovs Domestic abuse in-service
65. 620     7/5/14  Ivanovs Termination memo
66. 621-622 8/28/13 Ivanovs memo by Lisa Hawke
67. 644     2014-15 Excel MN ads for CSMs

68. 645-46 1/13 Blank CIS certification checklist
69. 647     Blank CSM Action Plan
70. 648-53 1/13 Blank CRIS training checklists
71. 654-81 CRIS Study Guide v. 3.1
72. 682-85 6/25/12 New Hire Orientation Training checklist
73. 686-87 var. Hoffman Certificates for training completion
74. 688-99 Certified Recruitment Specialist (CRS) Workbook
75. 700-13 var. Hoffman Certificates for training completion
76. 714-18 7/25/17 Hoffman printout of completed trainings
77. 719-34 var. Hoffman Certificates for training completion
78. 735     3/23/12 Blank Service Request Checklist
79. 736-49 3/15 Managing Prospects in iBears
80. 750-52 var Ivanovs Course completion certificates
81. 753-54 7/25/17 Ivanovs Training history
82. 755-761 var. Ivanovs Course completion certificates
83. 762     4/1/12  BAYADA Home Health Office Org Chart
84. 763-65 var. Ivanovs Course completion certificates
85. 766-67 10/07 Timekeeping Guide
86. 768-946        9/1/14  BAYADA Way of Operating an Office:  Home Care v. 4.4
87. 947-1126      5/26/14 BAYADA Way of Operating an Office:  Home Care v. 4.3
88. 1127-28        6/08 Job Description, BAYADA Nurses – CSM Hourly Services 0-2063
89. 1129-30        6/08 Job Description BAYADA Nurses – CSM Visit Services 0-3808
90. 1131-32        8/22/16 Staff Time keeping and reporting
91. 1133-35        11/14 Job Description, BAYADA Home Health CSM 1 & 2 – Home 0-3808
92. 1136-1181      4/13 BAYADA HHC guide for employees – 800
93. 1182-1210      BAYADA HHC guide for employees
94. 1211-1225      BAYADA Employee handbook
95. 1226-1407      2/23/15 BAYADA Way of Operating an Office:  Home Care v. 4.6
96. 1408-1589      5/26/15 BAYADA Way of Operating an Office:  Home Care v. 4.7
97. 1590-1768      8/26/13 BAYADA Way of Operating an Office:  Home Care v. 4.0
98. 1769-1947      2/25/13 BAYADA Way of Operating an Office:  Home Care v. 3.8
99. 1948-2126      6/17/13 BAYADA Way of Operating an Office:  Home Care v. 3.9
100.     2127-2305      11/25/13 BAYADA Way of Operating an Office:  Home Care v. 4.1
101.     2306-2485      2/24/14 BAYADA Way of Operating an Office:  Home Care v. 4.2
102.     2486-2667      11/24/14 BAYADA Way of Operating an Office:  Home Care v. 4.5
103.     9740-9919      5/20/19 BAYADA Way of Operating an Office:  Home Care v. 6.4
104.     2668    11/16 Specialty practices grid
105.     2669-79        11/16 Descriptions of specialty practices
106.     2680-82        2/16 Job Description RN and performance blank, 0-1694
107.     2684    2013-15 Excel of MN requisitions CSMs

| 108. | 2685 | 2013-15 Excel of NJ requisitions CSMs |
| 109. | 2686 | var Time records, Hess, Ivanovs, Hoffman, Long |
| 110. | 2687-2698 | 12/26/12 Ivanovs Performance evaluations of RNs |
| 111. | 2690-2692 | 12/28/12 Ivanovs Performance evaluation of RN |
| 112. | 2699 | 10/20/2016 Org Chart Home Health |
| 113. | 2700-2701 | 12/1/17 Daily Standup Report |
| 114. | 2712-2713 | Manage Schedule Requests Instructions |
| 115. | 2714-2719 | Manage PECOS Verification |
| 116. | 2732-2734 | New Scheduling Validations |
| 117. | 2737-2742 | Manage Medicare Eligibility Verification |
| 118. | 2743-2745 | Missed Visits Policy |
| 119. | 2746-2750 | Missed Visits Overview |
| 120. | 2755-2760 | NOMNC Instructions |
| 121. | 2761-2762 | Notification of Discharge policy |
| 122. | 2769-2770 | Payors Requiring New Authorization for Resumption of Care |
| 123. | 2784-2788 | Overview of Clients with No Plan of Care |
| 124. | 2789-2790 | Overtime Pay report |
| 125. | 2797-2799 | Pending Admissions instructions |
| 126. | 2802-2804 | PECOS Overview |
| 127. | 2807-2809 | Cross-Practice Coordination Checklist |
| 128. | 2814-2815 | Process a Missed Visit |
| 129. | 2816-2818 | Process Physicians Orders |
| 130. | 2819-2821 | Prebill Audit Overview |
| 131. | 2826-2827 | CMS Posts, page 2 of 17 |
| 132. | 3816-3817 | Home Care CSM 11/14/2013 |
| 133. | 3852-3854 | Hess signed On Call Manager JD, CSM Visits JD p. 1, , |
| 134. | 3856-3875 | Hess Training transcript and certificates |
| 135. | 3882-3886 | Hess Performance appraisal, 5/3/2013 |
| 136. | 3887-3891 | Hess Performance appraisal, 4/30/2012 |
| 137. | 3893 | Hess Resignation letter, undated, effective 7/8/2014 |
| 138. | 3894 | Hess Personnel Change Notice, 2/17/2014 |
| 139. | 3895 | Hess Personnel Change Notice, 11/18/2013 |
| 140. | 3897 | Hess Resignation letter, 10/18/2013 |
| 141. | 4381 | 1/12/2017 email, Allman to Peterkin, re Taylor |
| 142. | 4384 | 1/30/2017 Taylor offer letter |
| 143. | 4389-4390 | Taylor signed CSM JD |
| 144. | 4396-4398 | 4/17/2017 email Taylor to Peterkin re: Training time |
| 145. | 4401 | 7/14/2017 Coordination of Services Note |
| 146. | 4402 | Email from Mellichamp to Peterkin re Taylor |
| 147. | 4406 | 8/4/2017 Email Taylor to Peterkin, Steelman re resignation |
| 148. | 4689 | Adriana Vargas Smith Offer Letter |
| 149. | 5045 | Parker Offer letter 6/19/2014 |
| 150. | 5046-5047 | Parker signed CSM Visits JD |

151.      5048    1/3/2018 Gupton letter of resignation
152.      5054-5055      10/24/2014 Parker 90-Day Meeting notes
153.      5056    "Josie's Goals"
154.      5057-5063      Gupton Performance Appraisals
155.      5064-5065      Gupton personnel change notices,
156.      5068-5072      Gupton training certificates
157.      5076-5080      Gupton Growth & Finance Charts
158.      5081    Email Wisniewski to Parker re training
159.      5082    Gupton Checklist
160.      5083    Email 8/25/14 Wisniewski to Parker re Training Check-In
161.      5084    Email 8/20/14 Wisniewski to Parker re Training Recap
162.      5085    Email 8/15/14 Wisniewski to Parker re Training Recap
163.      5088-5092      On-Boarding Checklist, Gupton
164.      5093-5097      CSM Skill Set Checklist
165.      Gupton 6 Job Description CSM 1 & 2, Home Health 0-3808 rev. 11/14
166.      Gupton 9-11 Bonus potential calculation
167.      Gupton 15-16 Coordination Note Guide, Home Health
168.      Gupton 17-22, 120 excel calculation sheets
169.      Gupton 23 Client EMR Audit Tool
170.      Gupton 24-25 Employee File Checklist Tool, Field
171.      Gupton 28 Payroll Instructions
172.      Gupton 32-41 Interview Guide
173.      Gupton 49-50 Interview training
174.      Gupton 42-48 Incident reporting policy
175.      Gupton 61-87 Timekeeping slides Session I
176.      Gupton 88-109 Timekeeping slides Session III
177.      Gupton 110-13 Memo re paperwork
178.      Gupton 114-119 Daily Tasks
179.      Gupton 26-27 exit interview notes
180.      5934-5937      CSM/Associate/ALDP Interview Guide, Potteiger
181.      5942    8/30/2018 Offer letter to Potteiger
182.      5947-5949      CSM Home Health JD signed by Potteiger
183.      5952          Employee File Checklist, Potteiger
184.      5958-5962      Onboarding Checklist, Potteiger
185.      5963-5966      New CSM/CSA Orientation, Potteiger
186.      6020-6022      Bayada Portal Scavenger Hunt, Potteiger
187.      6023    4/4/2019 Email from Darnley to Potteiger re Clarity Needed
188.      6024    4/3/2019 Email from Jescavage to Potteiger re OLP CSM Attendance
189.      6025    6/12/2019 Counselling Report, Potteiger
190.      6026-6027      6/12/2019 Email from Cristini to Darnley re frustrations from nurses
191.      6426-6656 Time records for opt-ins (limited to remaining opt ins)
192.      6728-6734 Kristin Crighton Performance review

193.     6765-6771 Anika Downer Performance review
194.     Downer 1 Anika Downer offer letter
195.     7275-7573, 10071-10172, Time and pay records for opt-ins (limited to remaining opt ins)
196.     8617   Employee File Checklist, McWilliam
197.     8639   6/19/2017 Personnel Change Notice, McWilliam
198.     8655   5/3/2017 Offer letter to McWilliam
199.     8650, 8657-63 Jenna McWilliam Training certificates
200.     Defendant's operative Answer and Affirmative Defenses
201.     Bayada Initial Disclosures, for impeachment purposes
202.     Defendant's interrogatory answers, for impeachment purposes
203.     Updated payroll records for remaining opt ins through trial (to be produced by Defendant)
204.     The damages spreadsheet outlined above.
205.     Illustrative/summary exhibits to be provided prior to trial
206.     All exhibits listed by Defendant.

**Defendant objects to the introduction of plaintiffs' exhibits:**

203, 204, 205.  BAYADA reserves its right to object to these exhibits as they have not yet been produced. By agreement of the parties, plaintiffs must provide these complete documents to BAYADA at least 30 days in advance of trial for BAYADA to evaluate.

BAYADA reserves its right to object to any exhibit produced after the date of this Joint Final Pretrial Order, and objects to the introduction of any document that is incomplete.

BAYADA also reserves its right to object at trial to any attempted use of an exhibit for a purpose that would violate the Federal Rules of Evidence.

### B.  Defendant's Exhibits

**Defendant intends to introduce the following exhibits into evidence:**

|   | **DOCUMENT** | **BATES** |
|---|---|---|
| 1. | ALDP Program | B 156-160 <br> Hoffman 10-15 |
| 2. | BAYADA Certificate (Dealing with Negative Reactions to Perf Feedback, completing perf reviews, EE compliance management tool) | B 710-12 |
| 3. | Manage PECOS Verification | B 2714-19 |
| 4. | Manage Schedule Requests | B 2712-13 |
| 5. | Overtime Pay – Hours by Worked Week report | B 2789-90 |
| 6. | Operational Leadership Program – CSM II | B 2791-93 |
| 7. | Biggers - Resume | Biggers 1-3 |

| | | |
|---|---|---|
| 8. | Bushelle - Hours | B 10148-49 |
| 9. | Bushelle - Interrogatory Answers | |
| 10. | Cassese - Performance Appraisal | B 10352-10355 |
| 11. | Cassese – LinkedIn Profile | B 5010-5013 |
| 12. | Ciufo - Interrogatory Answers | |
| 13. | Ciufo - Resume | Ciufo 1-4 |
| 14. | Crighton - Interrogatory Answers | |
| 15. | Crighton - Resume | Crighton 1 |
| 16. | Crighton – Wages | B 7334-7338 |
| 17. | Downer - Hours | B 6591-6594 |
| 18. | Downer - Interrogatory Answers | |
| 19. | Downer - Resume | Downer 1-3 |
| 20. | Downer - Subpoena Response - METLIFE | |
| 21. | Gonzales (Bentley) - Interrogatory Answers | |
| 22. | Gupton - Interrogatory Answers | |
| 23. | Gupton - Resume | B 5031-5033 |
| 24. | Gupton – Signed Honesty & Confidentiality Policy | B 5067 |
| 25. | Gupton – Operational Leadership Competency Assessment | B 5073-75 |
| 26. | Gupton – Parker Training | B 5086-87 |
| 27. | Gupton – LinkedIn Profile | B 5018-5021 |
| 28. | Gupton – Orientation Training | B 5022 |
| 29. | Gupton – Application | B 5028 |
| 30. | Gupton – Resignation Letter | B 5048 |
| 31. | Gupton – Performance Review | B 5059-62 |
| 32. | Gupton – Weekly Bonus | Gupton 17 |
| 33. | Gupton – Weekly Bonus 7.2.16 | Gupton 19 |
| 34. | Hess - Declaration | |
| 35. | Hess - Interrogatory Answers | |
| 36. | Hess - Resume | Hess 1-5 |
| 37. | Hess – Linked In | |
| 38. | Hoffman - Collected Performance Evaluations by KH | B 208-482 |
| 39. | Hoffman - Counseling Report | B 302 |
| 40. | Hoffman - Counseling Report | B 250 |
| 41. | Hoffman - Counseling Report | B 227 |
| 42. | Hoffman - Counseling Report | B 301 |

| | | |
|---|---|---|
| 43. | Hoffman - Counseling Report | B 213 |
| 44. | Hoffman - Counseling Report | B 441 |
| 45. | Hoffman - Counseling Report | B 244 |
| 46. | Hoffman - CSM Job Description | Hoffman 018-19 |
| 47. | Hoffman - Earnings Statement | Hoffman 0026 |
| 48. | Hoffman - Hours | B 6495 |
| 49. | Hoffman - Hours - PTO | B 10126 |
| 50. | Hoffman - Interrogatory responses | |
| 51. | Hoffman - Performance Evaluations | B 215-217 |
| 52. | Hoffman - Performance Evaluations | B 370-372 |
| 53. | Hoffman - Performance Evaluations | B 208-212 |
| 54. | Hoffman - Performance Appraisal | B 4129-4133 |
| 55. | Hoffman - Resume | Hoffman 1-2 |
| 56. | Hoffman - Rule 26(a)(1) disclosures | |
| 57. | Hoffman - Time Entries showing PTO | B 10126 |
| 58. | Howze - Interrogatory Answers | |
| 59. | Howze - LinkedIn Profile | B 4229-4232 |
| 60. | Ivanovs - FMLA Application (REDACTED) | B 49-52 |
| 61. | Ivanovs - Interrogatory responses | |
| 62. | Ivanovs - Performance Appraisal | Ivanovs 16-19 |
| 63. | Ivanovs - PIP Progress Report | Ivanovs 12-15 |
| 64. | Job Description CSM Home Care 1/18 | B 10066-10067 |
| 65. | Ivanovs - Resume | Ivanovs 1-2 |
| 66. | Ivanovs - Rule 26(a)(1) disclosures, 6-30-17 | |
| 67. | Jemmott - LinkedIn Profile | B 5104-5110 |
| 68. | Johnson, A. - Resume | |
| 69. | Johnson, A. - 2018 Performance Review | B 7247-54 |
| 70. | Johnson, A. - 2019 Performance Review | B 7255-62 |
| 71. | Johnson, A. - 2020 Performance Review | B 7263-70 |
| 72. | Johnson, A. - Hours | B 6616-6619 |
| 73. | Johnson, A. - Interrogatory Answers | |
| 74. | LaVasseur - LinkedIn Profile | B 4360-4362 |
| 75. | McWilliam - Interrogatory Answers | |
| 76. | McWilliam - Resume | McWilliam 1-2 |
| 77. | McWilliam – 2017 Payroll | B 7447-48 |
| 78. | McWilliam – 2018 Payroll | B 7537-38 |

79.  McWilliam – Linked In
80.  Mullner - Resume                                    Mullner 1-2
81.  Petney - Interrogatory Answers
82.  Potteiger - Interrogatory Answers
83.  Potteiger - Resume                                  Potteiger 1-2
84.  Potteiger - Performance Issues                      B 6023-6027
85.  Sharks - Declaration
86.  Sharks - Interrogatory Answers
87.  Sims - Declaration
88.  Sims - Resume                                       Sims 3-4
89.  Sylvain - Note to Ellen re transfer request         Sylvain 6-7
90.  Taylor - Declaration
91.  Taylor - Email - Peterkin re Deidre                 B 4402
92.  Taylor - Hours                                      B 6610
93.  Taylor - Interrogatory Answers
94.  Taylor - Subpoena Response - AFLAC
95.  Van Dyke - Interrogatory Answers
96.  Vargas - Resume                                     Vargas 1
97.  Vargas-Smith - Interrogatory Answers
98.  Varner - Email - Varner re Director                 Varner 18-21
99.  Varner - Interrogatory Answers
100. Varner - Resume                                     Varner 1-3
101. Wing - Interrogatory Answers
102. Yarbrough - Interrogatory Answers
103. Yarbrough - Linked In                               B 4872-4876
104. Yarbrough - Resume                                  Yarbrough 1-2
105. Young, Rashelle - Interrogatory Answers
106. Young, Traci - Email                                Young 4-5
107. Young, Traci - Performance Appraisal                B 9690-9694
108. Hours - PTO - ALL OPT INS                           B 10071-10171
109. Complaint
110. Notice (mailed 7.22.2019)
111. Opt-in List

112. All exhibits listed by Plaintiffs (not restated here to
     avoid duplication)

28

113. Illustrative/summary exhibits to be provided prior to trial

114. Deposition Transcript – Crighton

115. Deposition Transcript – Downer

116. Deposition Transcript – Gupton

117. Deposition Transcript – Hess

118. Deposition Transcript – Hoffman

119. Deposition Transcript – Ivanovs

120. Deposition Transcript – McWilliam

121. Deposition Transcript – Potteiger

122. Deposition Transcript – Taylor

123. Deposition Transcript – Vargas-Smith

124. Deposition Transcript -Yarbrough

125. Gupton - Wages                                    B 7329-7334


**Plaintiffs object to the introduction of defendant's exhibit** (set forth number of exhibit and grounds for objection).

7-13, 21, 58-59, 67-74, 80-81, 85-89, 95, 98-101, 105-107:  Plaintiffs object to these exhibits as they pertain to opt-ins who are not representative witnesses, have not been subjected to deposition, and are otherwise inappropriate for collective action trial based on representative testimony and evidence. Plaintiffs do not plan to offer personnel documents or other evidence as to non-testifying opt ins, other than payroll/attendance records to establish damages in the damages phase.  Plaintiffs intend to submit a motion in limine as to this objection.

7, 11, 13, 15, 19-20, 23, 27, 36-37, 55, 59, 65, 67-68, 74, 76 79-80, 83, 88, 94, 96, 100, 103-104: Plaintiffs object to the introduction of resumes, applications, or online job-seeking profiles as irrelevant and having potential prejudice outweighing probative value.  Plaintiffs intend to submit a motion in limine as to this objection.

9, 12, 14, 18, 21-22, 34-35, 50, 56, 58, 61, 66, 73, 75, 81-82, 85-87, 90, 93, 95, 97, 99, 101-102, 105, and 114 to 124: Plaintiffs object to the introduction or written discovery responses, deposition transcripts, and prior sworn statements, such use should be limited to impeachment as wholesale admission includes information that is irrelevant, duplicative, unduly prejudicial, with limited probative value.

Plaintiffs reserve their right to object to any exhibit produced after the date of this Joint Final Pretrial Order, and objects to the introduction of any document that is incomplete.

Plaintiffs also reserve their right to object at trial to any attempted use of an exhibit for a purpose that would violate the Federal Rules of Evidence.

**PART VIII. LAW**

**A. Plaintiffs**

**Plaintiffs' statement of the legal issues in this case:**

1.      Did the parties' January 19, 2017, tolling agreement terminate effective November 17, 2018 as asserted by Plaintiffs, or upon the filing of the Complaint, as asserted by Defendant?

2.      Are the plaintiffs listed in Plaintiffs' Exhibit A as a collective exempt from the overtime requirements of the FLSA pursuant to the Executive Exemption set forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100?

3.      Are the plaintiffs listed in Plaintiffs' Exhibit A as a collective exempt from the overtime requirements of the FLSA pursuant to the Administrative Exemption set forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200?

4.      Are the plaintiffs listed in Plaintiffs' Exhibit A as a collective exempt from the overtime requirements of the FLSA pursuant to the Combination Exemption set forth in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.708?

5.      If BAYADA is found to have violated the FLSA, was BAYADA's violation willful, as that term is used in 29 U.S.C. § 255(a)?

6.      If BAYADA is found to have violated the FLSA, was BAYADA's classification of CSMs as exempt employees done in good faith and did BAYADA have reasonable grounds for believing that the classification was not a violation of the FLSA, in accordance with 29 U.S.C. § 260?

7.     Should damages be calculated pursuant to 29 U.S.C. § 207 and 29 C.F.R § 216(b) whereby a salaried employee's compensation is converted to a regular rate of pay or the fluctuating workweek method found in 29 C.F.R. § 778.114?

**B. Defendant**

**Defendant's statement of the legal issues in this case.**

1.     Whether plaintiffs will present an adequate and fair representative sampling of Client Services Managers to justify seeking a verdict as to all non-testifying opt-ins?

2.     How plaintiffs will present their case at trial in a manageable and not unduly confusing or prejudicial manner, given the multiple, handpicked plaintiff witnesses they propose to present, the lack of any effort by plaintiffs to present a valid sampling of Client Services Managers, the individualized circumstances and defenses for each plaintiff, the need for individual verdicts as to each testifying plaintiff, the two Client Services Manager sub-classes this Court certified, and the requirements for fairness and due process?

3.     Whether plaintiffs' resumes, LinkedIn accounts, and other admissions as to their duties at BAYADA can be used to establish their job duties, in addition to impeaching their credibility at trial?

4.     Whether any individual plaintiffs who failed and/or refused to perform the established managerial duties of their positions, despite the legitimate and reasonable expectations of BAYADA, can claim their positions were non-exempt based on their own failure to perform?

5.     What standards apply to establish an employee's primary duties for determination as to whether the employee was an exempt executive or administrative employee (or combination thereof)?

6.      Whether an employee must have ultimate authority to hire or fire an employee in order to be an exempt executive under the FLSA?

7.      Whether plaintiffs can prove that BAYADA willfully and intentionally misclassified these Client Services Managers as exempt from overtime pay?

8.      Whether BAYADA had a good-faith basis for classifying the Client Services Manager position as exempt under the FLSA?

9.      Whether plaintiffs should be barred from seeking to re-litigate the tolling issue as to opt-in plaintiffs after agreeing to the Court's notice period in its Orders of September 24, 2018, and April 19, 2019 [ECF 56, ECF 71], which Plaintiffs neither appealed nor moved to reconsider?

10.     Whether an individualized jury verdict as to each testifying plaintiff is required, in addition to a jury finding that plaintiffs have proven that BAYADA violated the Fair Labor Standards Act with regard to all non-testifying opt-ins?

**PART IX. MISCELLANEOUS**

**Plaintiffs**

1.      Plaintiffs previously filed three Motions *in Limine*, all of which were denied without prejudice until such time at this Joint Pretrial Order is entered and the parties have conferred.  Plaintiffs intend to refile the three Motions, and at least one additional Motion *in Limine*.  Accordingly, Plaintiffs request that all Motions *in Limine*, be filed within 21 days of the entry of this Pretrial Order by the Court, with each party allowed 14 days to submit a response, and the moving party 7 days in which to reply.

2.      A determination of the applicable tolling and statute of limitations is required. Plaintiffs suggest that within 21 days of the entry of this Pretrial Order by the Court, Plaintiffs

submit a letter to the Court of up to three single-spaced pages to explain their position, and that Defendant then have 14 days to respond with a letter to the Court of up to three single-spaced pages.

3.    The parties have stipulated to the bifurcation of liability and damages, although the exact method of bifurcation requires review with the Court.

**Defendants**

1.    BAYADA opposes plaintiffs' baseless intention to present evidence or argue that BAYADA did not follow its counsel's advice in retaining the Client Services Manager as exempt under the FLSA, and will file a motion in limine on same, if needed. BAYADA exercised its right to not waive the attorney-client privilege as to such advice and does not intend to assert an "advice of counsel" defense in support of its good-faith defense for the classification. That legal position, however, does not support or warrant plaintiffs arguing or suggesting that BAYADA disregarded the advice of its counsel (i.e., that BAYADA sought and received such advice, but did not rely on it). Rather, as with most cases involving privileged communications, the most that can be introduced into evidence or argued is that a party consulted with counsel. BAYADA agrees it cannot argue or suggest that it followed the advice of counsel, and likewise plaintiffs may not argue or suggest that BAYADA did not follow its counsel's advice, as that is privileged and not record evidence.

2.    BAYADA proposes that bifurcation of liability and damages be as follows: (1) in the first portion all issues as to liability, as well as determining the hours worked by each testifying plaintiff during covered workweeks and whether each testifying plaintiff's salary was intended to cover all hours worked or only the first 40 per workweek; and (2) the second portion, as needed, to cover all remaining issues as to damages, including (a) the amount of overtime pay damages for each testifying plaintiff, (b) the overtime pay damages for all other opt-in plaintiffs, (c) whether BAYADA had a good-faith defense for classifying the Client Service Managers as exempt, and (d) whether BAYADA willfully violated the FLSA.  Bifurcating the trial in this manner will allow the parties to put on evidence as to the hours

worked by each testifying plaintiff, thus avoiding the need to re-call any of them to the witness stand for the second phase.  In addition, if the plaintiffs were to prevail at the first phase, and the amount of hours worked were determined for each testifying plaintiff, the second phase of the damages trial would be much more amenable to the formulaic presentation or stipulation as to overtime pay that plaintiffs propose.

**Joint**

The Parties do not know of or anticipate any situation requiring notice under Rules 40(b), 609(b), 803(24) or 804(b)(5), Federal Rules of Evidence.

## PART X. JURY TRIALS

No later than twenty days prior to the scheduled trial date or at such time as the court may direct:

1. Each party shall submit to the District Judge and to opposing counsel a trial brief or memorandum with citations and authorities and arguments in support of the party's position on all issues of law. The trial brief shall be electronically filed.

2. Each party shall submit to the District Judge and to opposing counsel written requests for charges to the jury. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting same; and shall be numbered in sequence.   IF you have the capability, the Proposed Requests for Charge should be submitted on computer disk, Word Perfect format. All proposed requests for charges shall be electronically filed, and a paper copy must also be provided.

3. Each party shall submit to the judge and to opposing counsel proposed *voir dire* questions.

4. The parties are requesting that the second damages phase, if necessary, be held seven days after the jury enters a liability verdict.  This time frame will allow the parties to explore any agreements on various factors leading to wage calculations, potential agreement to bench try some of the damage issues, and/or potential to stipulate on damage amounts.

EACH OF THESE ITEMS IS TO BE FILED PRIOR TO THE FIRST TRIAL DATE EVEN IF THE CASE IS CONTINUED. COUNSEL ARE ON NOTICE THAT FAILURE TO PROVIDE TIMELY COMPLIANCE WITH THE REQUESTS OF PART X AND XI MAY RESULT IN THE POSTPONEMENT OF TRIAL AND THE ASSESSMENT OF JUROR AND OTHER COSTS AND/OR THE IMPOSITION OF SANCTION.

### CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to this First Amended Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

December 30, 2022

**SHAVITZ LAW GROUP, P.A.**

*s/Michael Palitz*
Michael Palitz (001002010)
830 3rd Ave., 5th Fl.
New York, NY 10022
(800) 616-4000
mpalitz@shavitzlaw.com

*Attorneys for Plaintiffs*

**HOMANS PECK, LLC**

*s/Michael D. Homans*.
Michael D. Homans (014461995)
1500 J. F. Kennedy Blvd., Ste. 520
Philadelphia, PA 19102
(215) 419-7477
mhomans@homanspeck.com

*Attorneys for Defendant BAYADA Home
Healthcare, Inc.*

Entry of the foregoing First Amended Joint Final Pretrial Order is hereby APPROVED this __3rd__ day of _____January_____, 2023.

_____
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**

| Last Name | First Name | Office Location | Column1 | Date of Hire | Last Day Worked |
|---|---|---|---|---|---|
| ALBERT | ANNE | Morris Plains Pediatrics, NJ | HC | 05/20/07 | 6/29/2019 |
| ARABIA | RICHARD | Washington Township Pediatrics, NJ | HC | 08/09/10 | 5/12/2016 |
| AYLESWORTH | CHARA DANIELLE | Beverly Assistive Care, MA | HC | 03/05/18 | Working as CSM |
| BABYUK | KATHERINE | Winooski, VT | HC | 07/17/17 | 8/28/2018 |
| BACOS | ANDREA K | Maui Behavioral Health, HI | HC | 12/27/13 | 5/23/2016 |
| BENTLEY | GISELLA | Toms River, NJ | HC | 06/17/11 | 6/26/2015 |
| BIGGERS | RITA | Recruiting Process Operations, NJ | HH | 01/25/16 | 5/15/2017 |
| BILLIRIS | ARIANNA | Paoli, PA | HC | 11/30/15 | 8/31/2018 |
| BRUNO | KRISTEN | Plymouth Visits, MA | HH | 01/26/16 | 11/2/2018 |
| BUSHELLE | DANIELLE | Camden County Visits, NJ | HH | 07/27/15 | 3/24/2017 |
| CARPENTER | KRISTINE | Plymouth Senior Living, MA | HH | 10/19/15 | 6/23/2019 |
| CASSESE | JASON | Ocean County Senior Living, NJ | HH | 08/03/15 | 3/14/2017 |
| CIUFO | SAMANTHA | Dedham Assistive Care State Programs, MA | HC | 01/24/19 | 5/1/2019 |
| COOK | SHAKIR | Charlotte Pediatrics North, NC | HC | 02/26/18 | 1/25/2019 |
| CRIGHTON | KRISTIN | Anne Arundel County, MD | HH | 07/21/14 | 1/4/2019 |
| DISLEY | SHARON | Atlantic City, NJ | HC | 02/02/05 | 9/27/2019 |
| DOWNER | ANIKA | Hyannis Assistive Care, MA | HC | 06/20/16 | 6/3/2019 |

| EARP | LISA M | NJ Ocean County Hospice, NJ | HH | 07/31/17 | 11/2/2018 |
|---|---|---|---|---|---|
| EBANKS | LATOYA | Roswell Adult, GA | HC | 08/09/16 | 3/2/2017 |
| FASHOLA | JOKOTADE | Roswell Adult, GA | HC | 10/27/14 | 6/3/2015 |
| FAZIO | BRIANNA | Plymouth Visits, MA | HH | 12/28/15 | 6/3/2016 |
| FORTIER | KATHRYN | Minneapolis Pediatrics, MN | HC | 12/15/14 | 4/8/2016 |
| GONZALES | ANDREA | North Denver Private, CO | HH | 08/11/14 | 5/3/2018 |
| GREER | STEPHANIE | Charlotte Metro State Programs, NC | HC | 05/07/18 | 8/31/2018 |
| GUPTON | JOSIE | Charlotte Senior Living, NC | HH | 06/25/14 | 2/2/2018 |
| HESS | CHRISTINA | North Denver Private, CO | HC | 08/15/11 | 8/8/2014 |
| HOFFMAN | KATIE | St. Paul Pediatrics, MN | HC | 09/30/13 | 7/19/2015 |
| HOWZE | RONNETTA | Fayetteville, NC | HC | 10/02/17 | 11/9/2018 |
| HURTACK | JULIE B | Indiana County Adults, PA | HC | 01/05/15 | 7/13/2018 |
| IVANOVS | SONYA | Cumberland Visits, NJ | HH | 07/09/12 | 7/15/2014 |
| JEMMOTT | SHAYLA EVITA | State Programs of the Triad, NC | HC | 11/03/14 | 5/10/2021 |
| KAMINSKI | ALEXIS | Charlotte Senior Living, NC | HH | 02/26/18 | 11/16/2018 |
| LAVASSEUR | ANDREA | New Port Richey, FL | HC | 04/06/15 | 2/2/2018 |
| MCKEOWN | AMANDA | Delaware County Senior Living, PA | HH | 09/18/05 | 8/13/2018 |
| MCWILLIAM | JENNA | South Burlington Visits, VT | HH | 06/19/17 | 3/8/2019 |
| MULLNER | MARAGARET ANNE | Chester County Senior Living, PA | HH | 01/28/13 | 8/22/2017 |
| MURPHY | MADONNA | Charlotte Metro State Programs, NC | HC | 05/23/11 | 6/2/2014 |
| NAST | DIANE (ESTATE OF) | Home Care Virtual Office, PA | HC | 04/04/11 | 12/15/2017 |

| OLIVER-ADAM | JOYCE V | Philadelphia Specialized Contracts, PA | HH | 04/13/10 | 1/20/2017 |
| PAQUETTE | TAYLOR | South Burlington Visits, VT | HH | 09/04/18 | 11/1/2019 |
| PERRY | ELIZABETH | Bennington, VT | HC | 03/01/12 | 1/15/2018 |
| PETNEY | STEVEN E | New Port Richey, FL | HC | 09/22/14 | 7/18/2016 |
| PINNOCK | SUSAN | Essex, NJ | HC | 07/20/15 | 7/29/2016 |
| POTTEIGER | TIFFANY | Lancaster County Visits, PA | HH | 09/17/18 | 7/12/2019 |
| SCHOEPHOERSTER (CHISM) | KEISHA | Ocotillo Division, AZ | HC | 09/08/14 | 2/26/2016 |
| SHARKS | DENISE | Norwalk, CT | HH | 03/16/15 | 10/16/2015 |
| SIMS | SARA | Williamsburg, VA | HC | 11/07/13 | 10/10/2016 |
| SIPPOLA | BETH | Media Assistive Care State Programs, PA | HC | 04/02/13 | 2/8/2021 |
| SMITH | CHLOE | Downingtown Adult Nursing, PA | HC | 06/13/16 | Working as CSM |
| SMITH | SHANNON | Worcester, MA | HH | 09/18/14 | 10/9/2015 |
| STROUD-MELVIN | OCIE | Fayetteville State Programs, NC | HC | 07/02/18 | 11/18/2018 |
| SWEETSER | DIANA ELIZABETH | Kauai Home Care, HI | HC | 01/30/12 | 12/31/2017 |
| SYLVAIN | PIERRE R | East Stroudsburg Visits, PA | HH | 08/11/14 | 1/29/2016 |
| TAYLOR | DEIDRA L | Columbia Assistive Care State Programs, SC | HC | 02/20/17 | 8/15/2017 |
| TUBBS-ISHIBASHI | KETTER ALII | Hilo Visits, HI | HH | 08/08/16 | 6/19/2017 |
| VAN DYKE | PATRICIA L | Morning Glory Division, CO | HH | 03/23/09 | 5/16/2019 |
| VARGAS (IRIZARRY) | JIOVANIS | Hudson County, NJ | HC | 03/25/13 | 6/29/2018 |

| | | | | | |
|---|---|---|---|---|---|
| VARGAS SMITH | ADRIANA | Downingtown Adult Nursing, PA | HC | 07/05/16 | 10/18/2019 |
| VARNER | ASHLEY | Oahu Home Care, HI | HC | 03/19/15 | 8/12/2016 |
| WALTERS | OLIVIA | Person County Visits, NC | HH | 06/12/18 | 7/3/2019 |
| WESTON | HEATHER | Fayetteville, NC | HC | 10/01/18 | 2/27/2020 |
| WING | AMANDA DANIELLE | Falmouth Visits, MA | HH | 03/24/14 | 11/13/2015 |
| WITHERINGTON | MARY | Hernando County, FL | HC | 09/02/14 | 5/14/2017 |
| YARBROUGH | BLAIRE | State Programs of Winston Salem, NC | HC | 06/08/15 | 11/29/2017 |
| YORK | LA SHANNON | State Programs of the Triad, NC | HC | 07/30/18 | 4/12/2019 |
| YOUNG | RASHELLE | Ocotillo Division, AZ | HC | 10/05/15 | 1/9/2021 |
| YOUNG | TRACI | Charlotte Visits, NC | HH | 02/04/13 | 9/15/2017 |