# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SONYA IVANOVS and KATIE HOFFMAN, on behalf of themselves and all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>BAYADA HOME HEALTH CARE, INC.,<br><br>Defendant. | Case No. 1:17-cv-01742-NLH-AMD |

# BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | THE SETTLEMENT | 2 |
| III. | THE COURT SHOULD APPROVE THE SETTLEMENT | 3 |
| | A. The Complexity and Duration of the Litigation | 4 |
| | B. The Reaction of the Class to the Settlement | 4 |
| | C. The Stage of the Proceedings and Amount of Discovery Completed | 5 |
| | D. The Risks of Establishing Liability and Damages | 5 |
| | E. Maintaining the Collective Through Trial | 5 |
| | F. The Gross Settlement Amount, Ability of Defendant to Withstand a Greater Judgment, and Reasonableness of the Proposed Settlement | 6 |
| IV. | THE COURT SHOULD APPROVE THE NOTICE AND RELEASE LANGUAGE | 6 |
| V. | THE COURT SHOULD AWARD PLAINTIFFS' UNCONTESTED ATTORNEYS' FEES AND EXPENSES | 7 |
| | A. Because They Were Separately Negotiated After the Parties Settled the Plaintiffs' Wage Claims, the Court Need Not Review the Fees and Costs | 7 |
| | B. In FLSA Collective Actions, Fees May – and Often Do – Exceed the Wages Recovered | 9 |
| | C. The Negotiated Fee is Substantially Less Than Plaintiffs' Counsel's Lodestar and Therefore is Presumptively Reasonable | 10 |
| | D. Because the Requested Fees are Already Significantly Less Than Plaintiffs' Counsel's Lodestar, No Further Reductions are Warranted | 11 |
| | E. The Court Should Approve Plaintiffs' Counsel's Expenses | 14 |
| VI. | THE COURT SHOULD APPROVE THE SERVICE AWARDS | 15 |
| VII. | CONCLUSION | 15 |

# **TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. BI Inc.*,
  2020 U.S. Dist. LEXIS 60656 ............................................................................................. 7-8

*Barnhill v. Stark Estate*,
  2015 U.S. Dist. LEXIS 125115 (E.D.N.Y. Sept. 17, 2015) .................................................. 10

*Bonett v. Educ. Debt Servs.*,
  2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003) ............................................................. 5

*Bredbenner v. Liberty Travel, Inc.*,
  2011 U.S. Dist. LEXIS 38663 ............................................................................................... 15

*Brumley v. Camin Cargo Control*,
  2012 U.S. Dist. LEXIS 40599 (D.N.J. Mar. 26, 2012) ....................................................... 3, 4

*Caddick v. Tasty Baking Co.*,
  2021 U.S. Dist. LEXIS 206991 (D.N.J. Oct. 27, 2021) ....................................................... 15

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ................................................................................................... 9

*Crankshaw v. NCL Corp.*,
  2018 U.S. Dist. LEXIS 42788 (S.D. Fla. Mar. 14, 2018) ....................................................... 9

*Dominguez v. Galaxy Recycling, Inc.*,
  2017 U.S. Dist. LEXIS 88855 (D.N.J. June 9, 2017) .......................................................... 15

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................................................... 3

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ..................................................................................................... 5

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................... 7

*Horton v. Right Turn Supply, LLC*, ensley v. Eckerhart,
  2020 U.S. Dist. LEXIS 71558, at *7-8 (W.D Pa. Apr. 23, 2020) ........................................... 8

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................................................ 11

*Joseph v. Caesar's Entm't Corp.*, ohnson v. Ga. Highway Express, Inc.,
  No. 10 Civ. 6293, 2012 U.S. Dist. LEXIS 20074 (D.N.J. July 23, 2012) .............................. 8

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) .............................................................................................. 1

*Mantz v. Steven Singer Jewelers*,
   100 F. App'x 78 (3d Cir. 2004) ............................................................... 12, 13, 14, 15

*Millea v. Metro-North Railroad Co.*,
   658 F.3d 154 (2d Cir. 2011) .................................................................................. 9

*Penska v. T.S. Dudley Land Co.*,)erdue v. Kenny A.,
   2021 U.S. Dist. LEXIS 34219, at *5, n.1 (W.D. Pa. Feb. 24, 2021) ....................... 8

*Perdue v. Kenny A.*,
   559 U.S. 542 (2010) ..................................................................................... 10, 12

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) .................................................................................. 6

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir.1998) ............................................................................ 5, 6-7

*Rabbenou v. Dayan Foods, Ltd.*,
   2017 U.S. Dist. LEXIS 122055 (D.N.J. Aug. 3, 2017) ....................................... 1, 2

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. 2012) ............................................................................ 4

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ................................................................................ 10

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990) .............................................................................. 10

*Somogyi v. Freedom Mortg. Corp.*,
   495 F. Supp. 3d 33 (D.N.J. 2020) ....................................................................... 15

*Souryavong v. Lackawanna Cty.*,
   872 F.3d 122 (3d Cir. 2017) ................................................................................ 12

*Stillman v. Staples, Inc.*,
   2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) ......................................... 5

*United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*,
   501 F.3d 283 (3d Cir. 2007) .................................................................................. 9

*Varacallo v. Mass. Mut. Life. Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ............................................................................... 6

*Weiss v. Mercedes–Benz of N. Am., Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995) .......................................................................... 5

**Statutes**

29 U.S.C. § 216 ............................................................................................................ 3, 7

Named Plaintiff, Katie Hoffman, along with the 62Plaintiffs who joined and are currenting participating in the case (collectively "Plaintiffs"), seek an Order approving the Parties' Settlement Agreement ("Settlement"), pursuant to the Fair Labor Standards Act ("FLSA"). The Settlement, attached as Exhibit 1 to the accompanying Declaration of Alan Quiles ("Quiles Decl."), was entered into after the Parties mediated the case after the trial in January 2023, which resulted in a mistrial as to all Plaintiffs except Sonya Ivanovs, whose claim the jury rejected, and after the Court scheduled the second trial to commence on October 16, 2023.  *See* Dkt. Entry July 5, 2023 (Amended Trial Notice, not numbered). The Parties seek the Court's approval pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982), which has been adopted by courts throughout the Third Circuit. *Brumley v. Camin Cargo Control*, Inc., 2012 U.S. Dist. LEXIS 40599, at *4-5 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food*); *Rabbenou v. Dayan Foods, Ltd.*, 2017 U.S. Dist. LEXIS 122055 (D.N.J. Aug. 3, 2017)).

**I.    BACKGROUND**

Given that this case already has been tried once, the Court is quite familiar with the procedural and substantive history. Plaintiffs filed the Complaint on March 15, 2017, seeking back wages and other relief pursuant to the FLSA and state laws. Dkt. No. 1. The certified FLSA collective is comprised of Client Service Managers ("CSMs") who worked for Defendant throughout the United States.

After years of extensive discovery and motion practice, the case proceeded to trial on January 18, 2023. After a two-week-long trial, the jury was unable to reach a verdict on liability for the plaintiffs other than Ms. Ivanovs, whose claims the jury rejected, so the Court declared a mistrial as to the remaining 62 plaintiffs. Dkt. No. 309.  Prior to retrial, the Parties attended mediation with Ruth D. Raisfeld on August 10, 2023, which resulted in a settlement proposal

accepted by the parties. The parties then entered the Settlement for which they now seek approval.

## II. THE SETTLEMENT

The Total Settlement amount is $700,000.00, to be allocated as follows:

- One Hundred Sixty-Five Thousand Dollars and Zero Cents ($165,000) as the "Plaintiffs' Settlement Payment" and "Plaintiffs' Service Awards Payment" to be awarded to certain Plaintiffs as set forth in Exhibit A to the Settlement.
- Four Hundred Fifteen Thousand Dollars and Zero Cents ($415,000) as the "Plaintiffs' Counsel's Fees; and
- One Hundred Twenty Thousand Dollars and Zero Cents ($120,000) as the "Plaintiffs' Expenses Payment," reimbursing the out-of-pocket expenses paid by Plaintiffs or their counsel in the case.

Settlement Agreement ¶ IV.A; Quiles Dec. at ¶ 7. Upon approval by the Court, Defendant will prepare checks in the amounts set forth in Exhibit A to the Settlement. Accompanying the check will be a Notice which will explain the settlement. Settlement Agreement at IV.B; Quiles Dec. at ¶ 8. Defendant will provide the checks to Plaintiffs' counsel who will distribute them, along with the Notice. Settlement Agreement at IV.B; Quiles Dec. at ¶ 9.

As explained in the Notice, each Plaintiff will receive a settlement check. *Id*. If a Plaintiff chooses to do so, then that person will sign the back of the check which contains a "Release of Claims" endorsement which releases all wage claims against Bayada, except the Plaintiffs receiving Service Awards will receive a check with a "Release of Claims" endorsement which is a general release of all claims against Bayada. *Id.* at V.A-C; Quiles Dec. at ¶¶ 9, 11. Pursuant to the Notice of Consent ("Opt-In Form") filed with this Court by each opt-in Plaintiff, each individually agreed that, "I designate Sonya Ivanovs, Katie Hoffman, and their attorneys as my

2

agents to make decisions on my behalf about the lawsuit, including how to prosecute the lawsuit, settlement, attorneys' fees and costs, and all other decisions relating to this lawsuit." (See, e.g., ECF Nos. 74, 75, 76.) This authorization was consistent with the Notice of a Collective Action approved by this Court, which informed each opt-in plaintiff, "5.  Effects of Joining this Case. If you do choose to join this action, you will be bound by any ruling, judgment, award, or settlement, whether favorable or unfavorable." (ECF No. 71.)

### III.   THE COURT SHOULD APPROVE THE SETTLEMENT

"When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to [29 U.S.C.] § 216(b), the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over the FLSA provisions.'" *Brumley*, 2012 U.S. Dist. LEXIS 40599, at *4-5 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food Stores,* 679 F.2d at 354). In making this determination, courts look to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975), including:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the [collective] through trial;

(7) the ability of defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of best possible recovery; and

3

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The Settlement in the instant case satisfies all of the *Girsh* factors.

### A. The Complexity and Duration of the Litigation

As evidenced by the six-plus years of litigation, the issues in this case are complex and will continue to be vigorously contested if the litigation continues. Absent settlement, the Parties would have to retry the case, which will include another round of preparation, some pretrial motions, and significant expenses. By reaching a favorable settlement now, the Parties have reduced the risk and uncertainty of trial, and avoided further expense and delay. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012). Of course, the specter of another mis-trial necessitating a third trial of this matter also haunts these proceedings. Moreover, the fact that the jury in the first trial ruled against Ms. Ivanovs raises the very real specter that a jury could find against some or all of the plaintiffs in any retrial.

Additionally, Defendant has already indicated its intent to appeal the denial of its post-trial motions for judgement as a matter law, having sought leave to do so on an interlocutory basis. Dkt. No. 342. Thus, regardless of the outcome of the second (or third) trial, the likelihood of prolonged appeal proceedings would likely add to the duration of this litigation.

The first *Girsh* factor weighs in favor of approval.

### B. The Reaction of the Class to the Settlement

Plaintiffs' Counsel represents that the Plaintiffs with whom they have discussed the settlement approve of the Settlement. Quiles Decl. at ¶ 19; s*ee Brumley*, 2012 U.S. Dist. LEXIS 40599, at *15-16 (approving FLSA settlement where plaintiffs did not object to settlement terms or fee request).

The second *Girsh* factor weighs in favor of approval

4

### C. The Stage of the Proceedings and Amount of Discovery Completed

Under this factor, the Parties must have an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir.1998). Here, the Parties already have tried the case to verdict once. Therefore, the Parties unquestionably entered into this arm's length settlement with "a clear view of the strengths and weaknesses of their case," *See Bonett v. Educ. Debt Servs.*, 2003 U.S. Dist. LEXIS 9757, at *17 (E.D. Pa. May 9, 2003) (internal quotations and citations omitted).

The third *Girsh* factor weighs in favor of approval.

### D. The Risks of Establishing Liability and Damages

As the first hung jury demonstrates, for the Parties to continue through a second trial would expose them to significant risks, both in terms of liability and damages. *Weiss v. Mercedes–Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995). The Parties continue to assert that their respective claims and defenses are strong, but they also recognize that they face litigation risk. In these circumstances, the Court should allow the Parties to "yield[] the[ir] highest hopes in exchange for certainty and resolution." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995).

The fourth and fifth *Girsh* factor weighs in favor of approval.

### E. Maintaining the Collective Through Trial

While Plaintiffs were able to maintain the certified FLSA Collective through the first trial, there is no guarantee that they will be able to replicate this result in the second trial where the evidence may vary, particularly given the passage of time since most of the Plaintiffs worked for Bayada. Defendant still would be able to seek decertification after the trial. *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247, at *63-65 n.8 (D.N.J. May 11, 2009). There is also the issue of Defendant's anticipated appeal of their post-trial motion for judgment as a matter of

5

law on the issue of the sufficiency of the representative evidence presented. Moreover, Ms. Ivanovs was the named plaintiff for a subset of the Plaintiffs, and without her continuing in the case, a new named representative would need to be identified and would be subject to new challenges.

The sixth *Girsh* factor weighs in favor of approval.

### F. The Gross Settlement Amount, Ability of Defendant to Withstand a Greater Judgment, and Reasonableness of the Proposed Settlement

The Parties determined that substantial compromise was in the interest of both sides. There is no formula that dictates whether a particular settlement amount is reasonable. See *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 355 (3d Cir. 2010) (precise value determinations not necessary). In assessing reasonableness, the Court should not speculate as to the best possible recovery; on the contrary, it must consider the risk of little or no recovery at all. *See Varacallo v. Mass. Mut. Life. Ins. Co*., 226 F.R.D. 207, 240 (D.N.J. 2005). Here, Plaintiffs achieved a settlement that will include 63 Plaintiffs, including named Plaintiff Hoffman. As the Court knows from the outcome of the first trial, the difficulty of the case speaks to the reasonableness of the Settlement. The reasonableness is further bolstered by the fact that the amount of the settlement was proposed by a neutral, third-party mediator as a reasonable compromise which was ultimately accepted by the parties.

The seventh, eighth and ninth *Girsh* factors weigh in favor of approval.

For all of these reasons, the Settlement is fair, reasonable, and adequate, and it should be approved.

### IV. THE COURT SHOULD APPROVE THE NOTICE AND RELEASE LANGUAGE

Pursuant to the relevant due process considerations, the notice must enable recipients to make an intelligent choice as to whether to participate in the Settlement. *See Prudential*, 148

6

F.3d at 326-27. The proposed Notice clearly explains the nature and principal terms of the Settlement. It sets forth the monetary relief the Settlement will provide participating individuals. Additionally, the Notice sets forth the attorneys' fees and expenses that will be paid from the Settlement, as well as the amount of the service awards. Settlement Agreement, Ex. B. The process clearly allows Plaintiffs to either accept the Settlement by negotiating the check with the release or to reject the Settlement by doing nothing.

## V. THE COURT SHOULD AWARD PLAINTIFFS' UNCONTESTED ATTORNEYS' FEES AND EXPENSES

Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses. After negotiating the amount Defendant would pay to the 63 Plaintiffs, the Parties separately negotiated "Plaintiffs' Counsel's Fees" and "Plaintiffs' Expense Payment," pursuant to which Defendant shall pay attorneys' fees in the amount of $415,000.00 and expenses in the amount of $120,000.00.

### A. Because They Were Separately Negotiated After the Parties Settled the Plaintiffs' Wage Claims, the Court Need Not Review the Fees and Costs

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee, noting that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In this case, the Parties did just that by separately negotiating Plaintiffs' attorney's fees *after* they had negotiated the Settlement amount for the Plaintiffs. This weighs in favor of approval because the amount of the Plaintiffs' recovery was not reduced to account for Plaintiffs' fees and Plaintiffs' counsel's loyalty to their clients was not undermined by a simultaneous negotiation. *Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *19, n. 7 (E.D. Pa. Apr. 6, 2020) ("As a threshold matter, the recovery of attorneys' fees and costs in this case does not

7

create a conflict of interest that could affect Plaintiffs' ultimate recovery. The attorneys' fees and costs were negotiated separately from the substantive terms of the Settlement and do not 'come out of' or 'decrease' the payment to the Opt-In Plaintiffs."). Several courts in this Circuit have found that they do not have the authority to review a settlement of attorneys' fees when the fees were separately negotiated from the settlement of the FLSA claims. *Joseph v. Caesar's Entm't Corp.*, No. 10 Civ. 6293, 2012 U.S. Dist. LEXIS 20074, at *6-7 (D.N.J. July 23, 2012) ("If the parties submit a proposed FLSA settlement and represent 'that the plaintiff's attorneys' fees was agreed upon separately and without regard to the amount paid to the plaintiff,' then 'the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" (citations omitted); *Penska v. T.S. Dudley Land Co.*, 2021 U.S. Dist. LEXIS 34219, at *5, n.1 (W.D. Pa. Feb. 24, 2021) ("On review of the settlement agreement, the Parties negotiated the attorneys' fee component separately. Accordingly, the Court agrees with the Parties that it lacks authority under the FLSA to approve the attorneys' fee component."); *Horton v. Right Turn Supply, LLC*, 2020 U.S. Dist. LEXIS 71558, at *7-8 (W.D Pa. Apr. 23, 2020) ("the Court does not believe it has authority to review the attorneys' fees component of this private, non-class settlement. . . . a settlement of attorneys' fees that is separate from a settlement of an FLSA claim is not subject to review. . . . "The statute speaks of allowing fees 'in addition to any judgment awarded,' treating the merits of an FLSA claim and the attorney fees as distinct . . . As a result, any court judgment on the settled merits would necessarily be separate from any court review of the settled attorney fees . . . Thus, regardless of whether we read the statute as requiring approval for FLSA settlements, we do not read it as requiring approval of settled attorney fees.") (citing *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019)).

8

### B. In FLSA Collective Actions, Fees May – and Often Do – Exceed the Wages Recovered

A fee request need not be proportional to an FLSA recovery; courts are well within their discretion to award fees that exceed a damages award. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (requiring proportionality between settled FLSA wage claims and settled attorneys' fees would be "inconsistent with the remedial goals of the FLSA," which is a "uniquely protective statute."); *Crankshaw v. NCL Corp.*, 2018 U.S. Dist. LEXIS 42788, at *15 (S.D. Fla. Mar. 14, 2018) ("an award of attorneys' fees should not simply be proportionate to the results obtained, especially in the context of FLSA cases, where it is not uncommon for fee awards to exceed the Plaintiff's recovery in order to ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights") (citations omitted); *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent Counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original).

Thus, it is not uncommon in FLSA collective and class actions for attorneys' fees to exceed the amount of back wages and liquidated damages paid to the plaintiffs. *See supra*; *see also United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007) (explaining, in the context of ERISA, which has a fee-shifting provision similar to that in the FLSA, "[n]othing in the text of [the statute] suggests that to be 'reasonable,' fees must be proportional"). Other courts have similarly recognized that there is nothing untoward

9

about attorney's fees being higher than the settlement amount for plaintiffs in a disputed unpaid wage litigation:

> Nor can we operate on a presumption that the plaintiff's bar in FLSA cases is out to enrich itself through unreasonable fees at the expense of their clients . . . . The fact is that most of the litigation to protect the vulnerable under remedial legislation is attorney-driven as a result of fee-shifting provisions, but it does not follow that there is a pervasive problem of attorneys favoring themselves at their clients' expense that is peculiar to the FLSA.

*Barnhill v. Stark Estate*, 2015 U.S. Dist. LEXIS 125115, at *6 (E.D.N.Y. Sept. 17, 2015).

Here, Plaintiffs' Counsel achieved good results for Plaintiffs and should be awarded a significant portion of the amount they expended to do so. Notably, Defendant does not oppose Plaintiffs' Counsel's fee request.

### C. The Negotiated Fee is Substantially Less Than Plaintiffs' Counsel's Lodestar and Therefore is Presumptively Reasonable

If the Court wishes to review the separately negotiated attorneys' fees in this case – although it need not, *see supra* – the Court first calculates a "lodestar" by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). There is a strong presumption that the lodestar is a reasonable amount. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Plaintiffs' Counsel negotiated its attorneys' fees not based on a percentage of the fund, but rather based on Plaintiffs' counsel's lodestar in this litigation. Quiles Decl. at ¶ 21. Given the complexity of the issues in this matter, Plaintiffs' Counsel submits that their requested fee which is significantly less than their lodestar is eminently reasonable, thereby supporting approval of their separately negotiated attorneys' fees.

10

Specifically, the total lodestar to date for the work performed by the attorneys representing the FLSA Collective Members in this case exceeds $2,250,000 for more than 3,600 hours of attorney and paralegal time spent prosecuting this case. Quiles Decl. at ¶¶ 22. This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in detailed time records. Quiles Decl. at ¶¶ 22. The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery in the case and the work involved in negotiating and effectuating the Settlement. Quiles Decl. at ¶ 22. While the lodestar incurred to date does not include the additional time and fess Plaintiffs' Counsel will expend through the administration of this Settlement, it already represents a substantial "negative multiplier," less than one fifth of the lodestar amount. Essentially, Plaintiffs' Counsel is required to "write off" substantial time to reach a negotiated resolution with respect to attorneys' fees. Quiles Decl. at ¶ 22.

### D. Because the Requested Fees are Already Significantly Less Than Plaintiffs' Counsel's Lodestar, No Further Reductions are Warranted

While a court **may** determine whether the lodestar should be adjusted based on the circumstances of the case and the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1988),[1] the Supreme Court has expressed a preference

---

[1] The factors set forth in *Johnson* are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

for the objective quality and predictable results from the lodestar approach over *Johnson's* open-endedness. *Perdue*, 559 U.S. at 544. As the Third Circuit explained, the:

> lodestar approach "achieved dominance," and in the 2010 case *Perdue v. Kenny A.* the Supreme Court spoke glowingly of the lodestar approach and its advantages as compared to the *Johnson* factors. 559 U.S. at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002)). The Court observed that the lodestar method has "several important virtues," most specifically that "the lodestar method is readily administrable" and, "unlike the Johnson approach," is objective in that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 551-52.
>
> Yet the Court in *Perdue* still left room for *Johnson* factors to play a role in the attorney fee award decision: First, a district court should calculate the lodestar—"the number of hours worked multiplied by the prevailing hourly rate"—which carries a "strong presumption" of "reasonable[ness]" and "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 543-44, 546, 552. After calculating the lodestar, the court **may** deviate from it, but **only** in the "**rare** circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 543-44 (emphasis added).

*Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017) (emphasis added). In addition, a district court "cannot decrease a fee award based on factors not raised at all by the adverse party." *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004).

The instant case does not present the "rare" circumstances in which the facts justify a deviation from Plaintiffs' counsel's already-reduced lodestar. Further, here Defendant has **agreed** to the separately negotiated attorneys' fees. Nonetheless, in an abundance of caution, Plaintiffs have set forth below the *Johnson* factors, application of which further supports the reasonableness of the attorneys' fees sought in this case.[2]

Plaintiffs' counsel—experienced labor and employment lawyers—dedicated a substantial amount of effort, time and labor to this case. Plaintiffs filed this case in March 2017, and

---

2  Because of the Supreme Court's and Third Circuit's holdings, the *Johnson* factors are analyzed holistically here, as opposed to individually, particularly because many of the individual factors overlap.

Plaintiffs' claims have been hotly contested every step of the way. Defendant strongly disputed liability and asserted multiple defenses throughout the litigation. The Parties fought very strongly and conducted extensive briefing over numerous key motions. The Parties tried the case to verdict, although the jury could not agree on all claims. As the Court is well-aware, the pretrial motion practice and discovery were complex and time-consuming. Defendant produced tens of thousands of pages of documents. The litigation of this case also precluded work on other matters. Quiles Decl. at ¶ 5.

All of the attorneys involved in the case has expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation. Quiles Decl. at ¶¶ 20. The attorneys ensured that there was not unnecessary time incurred, nor duplication of effort. *Id.* As outlined above, the time and labor required in the prosecution of this case was substantial, considering the extensive discovery and complex motion practice involved, not to mention the first trial.

The hourly rates Plaintiffs' Counsel seeks are reasonable considering the expertise of counsel and their familiarity and experience in FLSA collective action litigation. Quiles Decl. at ¶¶ 23. Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis, and thus counsel bore the risk of non-payment for the significant time expended. *Id.* The result obtained represents recovery of a substantial amount of the overtime wages claimed, and the separate attorneys' fee does not reduce the Plaintiffs' recovery. *Id.* By the time the administration of this Settlement is completed, the duration of this suit and Plaintiffs' counsel's relationship with the Plaintiffs will be over six and a half years. *Id.*

In total, Plaintiffs' Counsel's request for payment of fees in the amount of $415,000.00, represents a negative multiplier of less than approximately 80%. Given the risks presented by this lawsuit and the results obtained, the fee requested is indisputably reasonable. Based on

Plaintiffs' Counsel's experience, it is also expected that there will be significant future time spent by Plaintiffs' Counsel in administering the Settlement and speaking with Plaintiffs about their options, bringing the multiplier even further below "even." Again, Defendant does not oppose the amount of attorneys' fees and costs as set forth in the Parties' Settlement.

### E. The Court Should Approve Plaintiffs' Counsel's Expenses

In addition to the attorneys' fees sought above, Plaintiffs' counsel seeks reimbursement of its out-of-pocket expenses in the amount of $120,000.00. Quiles Decl. at ¶ 24. This amount represents less than the actual, out-of-pocket costs incurred by Plaintiff's counsel in litigating this matter. Overall, Plaintiffs' counsel incurred a total of $120,456.68 in actual and anticipated out-of-pocket costs and expenses, summarized in the chart below:

| Category of Costs | Total |
|---|---|
| Filing and Court Fees (including *pro hac* fees) and Service of Process | $2,954.79 |
| Court Reporter, Transcript and/or Video Deposition Fees | $19,459.09 |
| Travel for Trial, Depositions, Hearings and Mediation, and associated Lodging and Hotels Associated with Same | $45,577.29 |
| Postage/Express Mail/Copy | $848.78 |
| Administration of Conditional Certification Notice of Lawsuit | $17,000.00 |
| Mediation Costs | $9,000.00 |
| Litigation and Trial Support Services | $15,674.66 |
| Legal Research Costs | $9,942.07 |
| **Total:** | $120,456.68 |

*Id*.

The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' Counsel, which are summarized in the attached, supporting declarations of Plaintiffs' Counsel. Quiles Decl. at ¶ 25. The costs described are accurate regarding all the

expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of the case. *Id.* Plaintiffs' counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved. *Id.*

For these reasons, the Court should approve Plaintiffs' separately negotiated attorneys' fees and costs which Defendant does not oppose.

### VI. THE COURT SHOULD APPROVE THE SERVICE AWARDS

"There is substantial precedent from this Circuit supporting approval of incentive payments." *Somogyi v. Freedom Mortg. Corp.,* 495 F. Supp. 3d 33, 352-54 (D.N.J. 2020) (collecting cases). The Settlement provides that the Plaintiffs will seek and Defendant will not oppose, service awards as indicated in Exhibit A to the Settlement. The awards range from $2,000.00 for some Plaintiffs who opted in to $3,000.00 for Named Plaintiff Katie Hoffman. The amounts of the service awards are reasonable and significantly less than awards in other FLSA and class action cases. *Dominguez v. Galaxy Recycling, Inc*., 2017 U.S. Dist. LEXIS 88855, at *25-26 (D.N.J. June 9, 2017) ($10,000 in FLSA case that did not go to trial); *Bredbenner v. Liberty Travel, Inc*., 2011 U.S. Dist. LEXIS 38663, at * (D.N.J. Apr. 8, 2011) ($10,000 in case 12 years ago that did not go to trial); *Caddick v. Tasty Baking Co*., 2021 U.S. Dist. LEXIS 206991, at *28 (D.N.J. Oct. 27, 2021) ($5,000 in case that did not go to trial); *see also* 4 *Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

### VII. CONCLUSION

The Parties respectfully request that the Court approve the Settlement Agreement and Settlement Notice, as well as the service awards and attorney's fees and costs.

| | |
|---|---|
| Dated: October 20, 2023<br>New York, New York | Respectfully submitted,<br><br>s/ Michael Palitz<br>Michael Palitz<br>**SHAVITZ LAW GROUP, P.A**<br>800 3rd Avenue, Suite 2800<br>New York, NY 10022<br>Telephone: (800) 616-4000<br>Facsimile: (561) 447-8831<br><br>Gregg I. Shavitz*<br>Alan L. Quiles*<br>**SHAVITZ LAW GROUP, P.A**<br>951 Yamato Road, Suite 285<br>Boca Raton, FL 33431<br>Telephone: (561) 447-8888<br>gshavitz@shavitzlaw.com<br>aquiles@shavitzlaw.com<br><br>Brendan J. Donelon*<br>**DONELON, P.C.**<br>4600 Madison, Ste. 810<br>Kansas City, MO 64112<br>816-221-7100<br>Fax: 816-709-1044<br>brendan@donelonpc.com<br><br>* admitted *pro hac vice*<br><br>*Attorneys for Plaintiffs* |

## CERTITICATE OF SERVICE

I hereby certify that on October 20, 2023 pursuant to this Court's CM/ECF procedures and true and correct copy was provided to all counsel of record in this matter.

*/s/ Michael Palitz*
Michael Palitz
Counsel for Plaintiffs